# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. HENRY, | ) Case No.: |
| | ) |
| Plaintiff, | ) Judge _____ |
| | ) |
| v. | ) |
| | ) |
| MICHAELS STORES, INC., | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF MATTHEW D. BARNES

Now comes the Declarant, Matthew D. Barnes, who declares under penalty of perjury:

1.     I, Matthew D. Barnes, am over the age of 21 years and am competent to make this Declaration.

2.     I am an associate with the law firm Winston & Strawn LLP, which represents Michaels in the above-captioned case. I am a member in good standing of the Illinois Bar. I have personal knowledge of the facts set forth herein and if called to testify would do so competently.

3.     Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff William J. Henry's Class Action Complaint against Michaels Stores, Inc. ("Michaels"), filed on April 30, 2012 in the Court of Common Pleas, Lake County, Ohio, Case No. 12-CV-001097.

4.     Attached hereto as **Exhibit B** is a true and correct copy of Plaintiff William J. Henry's Opposition to Defendant's Motion to Dismiss (without exhibits), filed on August 3, 2012 in the Court of Common Pleas, Lake County, Ohio, Case No. 12-CV-001097.

5.     Attached hereto as **Exhibit C** are true and correct copies of all other process, pleadings, and orders served on Michaels in the Court of Common Pleas, Lake County, Ohio,

1



Case No. 12-CV-001097.

6. Attached hereto as **Exhibit D** is a true and correct copy of the United States Supreme Court's decision in *Standard Fire Insurance Co. v. Knowles*, No. 11-1450, 2013 WL 1104735 (Mar. 19, 2013).

7. Attached hereto as **Exhibit E** is a true and correct copy of the Notice of Filing of Notice of Removal that Michaels is filing with the Clerk of the Court of Common Pleas, Lake County, Ohio.

8. Based on my review of Michaels records and Plaintiff's pleadings, I have determined that Plaintiff and/or at least one member of the putative class are residents and citizens of Ohio.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed: April 11, 2013

Matthew D. Barnes

Exhibit A

# SUMMONS
## COURT OF COMMON PLEAS
## LAKE COUNTY OHIO

WILLIAM J HENRY
       Plaintiff

       VS.

MICHAELS STORES INC
       Defendant

Case Number: **12CV001097**
Judge JOSEPH GIBSON

To the following named DEFENDANT(S):

       MICHAELS STORES INC
       C/O CSC LAWYERS INCORPORATING SERVICE
       (CORPORATION SERVICE COMPANY)
       50 W BROAD STREET SUITE 1800
       COLUMBUS OH 43215

You have been named a Defendant in a complaint filed in the Lake County Court of Common Pleas, Lake County Courthouse, Painesville, Ohio. A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:

       NICOLE T FIORELLI ESQ
       DWORKEN & BERNSTEIN CO. LPA
       60 SOUTH PARK PLACE
       PAINESVILLE 44077

You are hereby summoned and required to do the following:

1. Within 28 days after service of this Summons upon you, serve a copy of an Answer to the Complaint on the Plaintiff's Attorney or on the Plaintiff, if he/she has no attorney of record;

2. Within 3 days after you serve the Plaintiff or the Plaintiff's Attorney, file an Answer with your original signature with the Lake County Clerk of Court.

Calculations of time are exclusive of the day of service.

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

Maureen G. Kelly
Clerk, Court of Common Pleas
Lake County, Ohio
25 N. Park Place
Painesville OH 44077

By

Deputy Clerk

May 3, 2012

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

WILLIAM J. HENRY
38813 Margaret Walsh Ct.
Willoughby, Ohio 44094

vs.

MICHAELS STORES INC

In care of its registered agent for service
of process

CSC-LAWYERS INCORPORATING
SERVICE (CORPORATION SERVICE
COMPANY)
50 W. Broad Street Suite 1800
Columbus, Ohio 43215

Defendant.

**12CV001097**
**JOSEPH GIBSON**

**CLASS ACTION COMPLAINT**

**JURY DEMAND ENDORSED HEREON**

FILED
2012 APR 30 3:58
MAUREEN G. KELLY
LAKE CO. CLERK
OF COURT

Now comes Plaintiff William Henry ("Plaintiff"), individually and as representative of all others similarly situated, and for his Class Action Complaint states:

**INTRODUCTION**

This is a class action brought by Plaintiff, individually and as a putative representative, against Michaels Stores, Inc. ("Defendant"). Defendant sells craft supplies, framing supplies and services to the general public. Over the last several years, Defendant has been advertising at least 40% off sales of its framing products and/or services.

In reality, Defendant *always* has a sale on framing products and/or services in its stores with advertised discounts of 40% or more. These discounts never end, but continue, week in and week out. The result is that Defendant's framing products and/or services prices are always the same and are never actually discounted. These non-existent sales were the subject of a recent investigation and $1.8 million settlement between the New York Attorney General and Defendant in New York.

By advertising discounts without actually providing a discount to its customers, Defendant is violating Ohio law.

## PARTIES

1.    Plaintiff is an individual and resident of the State of Ohio, County of Lake and City of Willoughby.

2.    Defendant is a corporation organized under the laws of Delaware, headquartered in Texas and registered to do business with the Secretary of State of Ohio. Defendant provides consumers with products such as framing products and/or services such as custom framing.

## JURISDICTION & VENUE

3.    This court has personal jurisdiction over Defendant because Defendant transacts business in the state of Ohio and contracts to supply goods in the State of Ohio. R.C. § 2307.382.

4.    Venue is proper in this Court, Lake County, Ohio, because the acts and occurrences giving rise to this lawsuit arose in Lake County, and Defendant conducts business in Lake County.

## FACTS

5.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

6.    Around approximately September 21, 2011, Plaintiff went to Defendant's store in Mentor, Ohio to purchase a frame for a poster.

7.    Plaintiff went to Defendant's store, as opposed to other stores, because Defendant's store advertised a sale on framing products and/or services.

8.    Plaintiff saw advertisements indicating that there was indeed a sale on framing products and/or services.

9.    Plaintiff contracted with Defendant for a frame for his poster.

10.    Plaintiff contracted with Defendant to purchase a frame with the understanding that the frame would be, as represented by Defendant, at least 40% off.

11.    Unbeknownst to Plaintiff, Defendant always had a sale on framing products and/or services of 40% off or more.

12.    The ongoing, constant sale created a situation where the price of framing products and/or services is never actually discounted but stays constant over time.

13.    Plaintiff paid Defendant to have his picture framed.

2

14.     Because of these ongoing sales, Plaintiff never received the advertised discount off of Defendant's regular prices.

15.     Defendant's practice of advertising framing products and/or services at a non-existent discount was the subject of a recent investigation and $1.8 million settlement with the New York Attorney General.[1]   According to Attorney General Schneiderman, "For years, Michaels duped consumers into thinking they were receiving huge discounts, when in fact, they were simply paying the regular store price.   Through deceptive advertising practices, this company violated the law and took advantage of hardworking consumers trying to save money."[2]

## CLASS ALLEGATIONS

16.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

17.     Plaintiff brings this action on behalf of himself and for all other Ohio residents similarly situated (herein collectively referred to as "Plaintiffs" or "putative class members") who: purchased framing products and/or services from Defendant within the last 15 years during a week where Defendant was advertising a discount for framing products and/or services.

18.     This class numbers over forty (40) persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

19.     The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the entire class as a whole.

20.     Defendant has engaged in the same conduct regarding all of the other members of the class asserted in this suit.

21.     The claims, defenses, and injuries of the representative Plaintiff are typical of the claims, defenses and injuries of the entire class, and the claims, defenses and injuries of each class member are typical of those of the entire class.

22.     Representative Plaintiff will fully and adequately protect and represent the entire class, and all of its putative class members.

23.     The identity of all members of this class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant and others.

---

[1]   http://www.ag.ny.gov/press-release/ag-schneiderman-secures-18-million-michaels-stores-misleading-consumers (last viewed 17 April 2012).
[2] *Id.*

3

24.     The prosecution of separate actions by each member of this class would create a substantial risk of inconsistent or varying adjudications with regard to individual members of the class that would establish incompatible standards of conduct for Defendant.

25.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Further, the maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

26.     However, the named Plaintiff and the class of Plaintiffs do not seek, nor will they accept, any monetary award, or relief of any other type (exclusive of interest and costs) in any amount greater than $5,000,000 for all recovery, damages, or any other relief (exclusive of interests and costs)—it being the specific intent not to provide any United States District Court with jurisdiction under the terms of the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), the diversity statutes of 28 U.S.C. § 1332, the supplemental jurisdiction statute of 28 U.S.C. § 1367, or any other law.

27.     The entire matter in controversy in this action's class claims, as are asserted in the First, Second, Third, and Fourth Counts, does not exceed the sum or value of $5,000,000 because (a) the named Plaintiff, on behalf of himself and the class, hereby irrevocably disclaims any amount greater than $5,000,000 which may be awarded to the class under the class claims brought in the First, Second Third, and Fourth Counts, (b) the named Plaintiff, on behalf of himself and the class, hereby irrevocably enters into an irrevocable stipulation of remittitur such that, regardless of whatever amount may be awarded to the class under the class claims brought in the First, Second, Third, and Fourth Counts, all but $5,000,000 of such amount shall be remitted, and (c) the named Plaintiff, on behalf of himself and the class, hereby irrevocably disclaims the operation of Ohio Rule of Civil Procedure 54(C) to the extent such operation would permit or otherwise allow a recovery to the class greater than $5,000,000 under the class claims brought in the First, Second, Third, and Fourth Counts.

## FIRST CLAIM FOR RELIEF
### Violation of ORC 1345.01 et seq.

28.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

29.     Plaintiffs are consumers for purposes of ORC 1345.01 et seq.

30.     Defendant is a person and a supplier for purposes of ORC 1345.01 et seq.

31.     The purchase of framing products and/or services is a "consumer transaction" as defined by ORC 1345.01(A) et seq.

32.     Defendant advertised that its framing products and/or services were discounted by 40% or more.

33.     Defendant continued to advertise the discounts of 40% or more week after week, month after month, year after year.

34.     Because Defendant's prices were constantly the same, when Defendant advertised framing products and/or services prices at discounts of 40% or more, Plaintiffs never actually received anything close to a discount of 40% or more from the store's normal prices.

35.     Defendant, by advertising that its framing products and/or services were discounted by 40% or more when they were not, was thus representing that its framing products and/or services had benefits that they did not have, which is a violation of ORC 1345.02(B)(1).

36.     In addition, Defendant, by advertising that its framing products and/or services were discounted by 40% or more when they were not, was also representing that its framing products and/or services had a specific price advantage when they did not, which is a violation of ORC 1345.02(B)(8).

37.     These practices have already been found to be a violation of ORC 1345.01 et. seq. by Ohio courts. See *State ex rel Celebrezze v. Nationwide Warehouse & Storage, Inc.*, Case No. 90CVH086199 (Franklin Comm. Pleas, 1990), *State of Ohio ex rel. Rogers v. Indoor Environmental Air Consulting, LLC*, Case No. 08 CVH 03 4028 (Franklin Comm. Pleas, 2008) and *State of Ohio ex rel. Petro v. Craftmatic Organization, Inc.*, Case No. 05-CVH-06-06060 (Franklin Comm. Pleas 2005).

38.     As a direct and proximate result of Defendant's violations, Plaintiffs have been injured.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

39.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

40.    Plaintiffs and Defendant entered into a contract.

41.    The contract provided that Plaintiffs would pay Defendant for framing products and/or services.

42.    Defendant contracted to provide framing products and/or services to Plaintiffs for 40% or more off.

43.    Plaintiffs paid Defendant for these framing products and/or services.

44.    However, Defendant breached the contract by charging Plaintiffs what was actually the full price of these framing products and/or services rather than the purported discount that Defendant advertised.

45.    Defendant, without legal justification, advertised these discounts without providing the full discounts.

46.    As a direct and proximate result of Defendant's breach, Plaintiffs have been injured.

### THIRD CLAIM FOR RELIEF

### Unjust Enrichment

47.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

48.    Defendant charged Plaintiffs for framing products and/or services.

49.    Defendant represented that these framing products and/or services were discounted by 40% or more.

50.    As detailed above, the framing products and/or services were not discounted by 40% or more.

51.    Plaintiffs paid for framing products and/or services.

52.    Because the framing products and/or services were advertised as being discounted by 40% or more when, in reality, they were not, Plaintiffs paid more than they would have had the framing products and/or services actually been discounted by 40% or more.

6

53.    As a result of these actions, Defendant received benefits under circumstances where it would be unjust to retain these benefits.

54.    As a direct and proximate result of Defendant's acts, Defendant must disgorge all such unjust revenue and return it to Plaintiffs.

## FOURTH CLAIM FOR RELIEF
### Fraud

55.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

56.    Defendant represented to Plaintiffs that its framing products and/or services were discounted by 40% or more.

57.    The price of the framing products and/or services was material to the transaction.

58.    Defendant knew that its framing products and/or services were always advertised as 40% or more off when, in reality, the price was constant and not discounted by 40% or more.

59.    Defendant intended to mislead Plaintiffs into relying on its representations that the price was discounted.

60.    Plaintiffs justifiably relied on these representations in purchasing framing products and/or services from Defendant.

61.    As a direct and proximate result of Defendant' fraud, Plaintiffs have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment as follows:

1.    For an Order determining at the earliest possible time that this matter may proceed as a class action under Civil Rule 23 and certifying this case as such;

2.    For compensatory damages;

3.    For punitive damages;

4.    For reasonable costs and attorney fees necessarily incurred herein pursuant to common law, R.C. § 1345.09(F), and/or R.C. §4165.03;

5.    For such other or further relief as this Honorable Court deems Plaintiff and the class entitled.

7

6.      However, the named Plaintiff and the class of Plaintiffs do not seek, nor will they accept, any monetary award, or relief of any other type (exclusive of interest and costs) in any amount greater than $5,000,000 for all recovery, damages, or any other relief (exclusive of interests and costs)—it being the specific intent not to provide any United States District Court with jurisdiction under the terms of the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), the diversity statutes of 28 U.S.C. § 1332, the supplemental jurisdiction statute of 28 U.S.C. § 1367, or any other law.

7.      The entire matter in controversy in this action's class claims, as are asserted in the First, Second, Third, and Fourth Counts, does not exceed the sum or value of $5,000,000 because (a) the named Plaintiff, on behalf of himself and the class, hereby irrevocably disclaims any amount greater than $5,000,000 which may be awarded to the class under the class claims brought in the First, Second Third, and Fourth Counts, (b) the named Plaintiff, on behalf of himself and the class, hereby irrevocably enters into an irrevocable stipulation of remittitur such that, regardless of whatever amount may be awarded to the class under the class claims brought in the First, Second, Third, and Fourth Counts, all but $5,000,000 of such amount shall be remitted, and (c) the named Plaintiff, on behalf of himself and the class, hereby irrevocably disclaims the operation of Ohio Rule of Civil Procedure 54(C) to the extent such operation would permit or otherwise allow a recovery to the class greater than $5,000,000 under the class claims brought in the First, Second, Third, and Fourth Counts.

Respectfully submitted,

Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Michael R. Rudick, Esq. (#(#0087800)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391    (440) 352-3469 Fax
Email: *pperotti@dworkenlaw.com*
    *nfiorelli@dworkenlaw.com*
    *mrudick@dworkenlaw.com*

## JURY DEMAND

Now come Plaintiffs, by and through counsel, and hereby requests that the within matter be tried by a jury of the maximum number allowed by law.

Nicole T. Fiorelli, Esq. (#0079204)
DWORKEN & BERNSTEIN CO., L.P.A.

One of the Attorneys for Plaintiffs

FILED
IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

2012 APR 30 P 3: 58

MAUREEN G. KELLY
LAKE CO. CLERK OF COURT

| | ) | |
|---|---|---|
| **Plaintiff** | ) | 12CV001097 |
| | ) | **JOSEPH GIBSON** |
| **vs** | ) | |
| | ) | |
| **Defendant** | ) | |

In the interest of the most economical and efficient use of the Court's time and to speed the case to conclusion, the following order is hereby made in this cause and shall be binding on all parties hereto, in addition to the 1996 Local Rules of Court for Lake County and their amendments.

**NOTE:** **AMENDMENT TO LOC.R. III(A)(1) SPECIFICALLY LIMITING TO TEN (10) PAGES THE BODY OR TEXT OF ANY DOCUMENT.**

## PRETRIAL PROCEDURES

1. Discovery must commence immediately upon filing the cause and must be complete by the pretrial. Failure to complete discovery by the pretrial may result in sanctions being imposed. Discovery may continue beyond the pretrial only upon leave of Court.

2. The obligation to inform the Court of special matters, pleadings, motions, etc., (e.g., replevin, attachment, TRO, protective order) is upon the respective counsel. If immediate relief is requested, counsel must notify the Assignment Commissioner of this Court.

3. The filing of leaves to plead, motions or other pleadings, on any matter, shall not change pretrial or trial dates. Only one (1) thirty day leave will be permitted on the answer. All leaves should be accompanied by a journal entry.

4. A pretrial will be scheduled approximately six (6) months after filing of the complaint and trial will be approximately thirty (30) days thereafter. Each counsel shall submit the pretrial form to the Court's bailiff at the time of the pretrial. The pretrial form shall not be filed.

   Continuance of a pretrial may be obtained upon a telephone call to the Court's Assignment Commissioner at (440) 350-2705.

   The respective attorneys shall contact each other prior to the scheduled pretrial with the purpose of resolving all issues as well as settlement.

The attorney who intends to try the case must attend the pretrial and must be fully informed about the case and be prepared to discuss settlement at the pretrial. Counsel must, without exception, have his client present *or* have full authority to settle. If any party is represented by an insurance carrier, an insurance representative *must* be present with full authority to settle.

5.    A case management conference may be scheduled at the request of any party. During the conference, the Court shall establish priorities and a schedule to guide the case to conclusion. During the case management conference, firm discovery and dispositive motion deadlines and pretrial and trial dates will be established.

6.    Failure to appear at any scheduled proceeding may result in sanctions being imposed against any party and/or his or her counsel.

7.    After the pretrial has been set, a motion for summary judgment may be made only with leave of court, in accordance with Civ.R. 56.

8.    Motions for default judgment may be set for oral or non-oral hearings, but regardless of the type of hearing, the motion will not be granted unless supporting evidence is also presented.

9.    The parties, without exception, are to abide by Loc.R. III(A)(1), specifically limiting to ten (10) pages the body or text of any document, except a complaint, counterclaim, crossclaim or third party complaint. Further, the Court shall strictly enforce Civ.R. 11.

10.    In accordance with Loc.R. III(D)(2) and (3), parties shall not attach copies of cases cited in their briefs unless the case cannot be found on Lexis or Westlaw. In addition, parties shall not attach to their filings any copies of pleadings, motions or notices already filed in the case.

11.    Pursuant to the Court of Common Pleas Journal Entry of May 5, 2006, certain "personal and private" information, including social security numbers and full financial account numbers, may not be included in a public record. It is the responsibility of the filing party and counsel to remove such information prior to filing. Documents containing personal and private information that is not redacted may be stricken from the record.

## TRIAL PROCEDURES

12.    No continuance of a TRIAL date will be granted without filing a written motion with the signature of the client along with a supporting affidavit or other appropriate documentation. The motion must be accompanied by a judgment

entry with a blank space for the Court to insert the next appropriate court date(s). For continuances of a pretrial, see No. 4.

13. Where video tape depositions or written depositions are to be used at trial, objection to any testimony must be brought to the attention of the Court at least two (2) weeks before trial by motion, listing the specific objections upon which ruling is required, as well as transcribing those portions pertinent to the objections. No objections to depositions will be entertained at trial.

Video tape depositions of each witness shall be limited to one (1) hour for each party. Irrespective of time, each party may conduct one (1) direct examination and one (1) re-direct examination, one (1) cross-examination and one (1) re-cross-examination only. All material in excess of the above time will be excluded.

14. Trial briefs shall be filed with the Clerk of Courts two (2) weeks prior to the scheduled trial date. Counsel shall submit to this Court prior to trial any stipulations agreed upon by the parties.

15. EXHIBITS: Two (2) copies of the exhibit list shall be delivered to the Court on the day of trial. Counsel shall also exchange copies of all exhibits and exhibit indexes on this date.

Exhibits shall be marked prior to trial. Plaintiff shall mark exhibits with numbers; defendant shall mark exhibits with letters.

16. Pursuant to Civ.R. 51(A), the jury shall receive a written copy of the Court's instructions. Prior to the end of trial, each party shall submit a complete set of proposed jury instructions, including any special instructions outside of the standard Ohio Jury Instructions.

The parties shall submit one copy of the written instructions to opposing counsel and one written copy to the Court. The parties shall also provide an electronic copy in Word or WordPerfect (on disk or by e-mail sent to CommonPleasCourtII@lakecountyohio.gov) to the Court so that the proposed instructions may be adjusted or corrected. Neither the written copy nor the electronic copy should be filed with the Clerk of Courts, unless preservation of appellate rights is concerned.

17. The Court is to be notified immediately when settlement is reached on cases already assigned for trial. The judgment entry of settlement is to be submitted to the Court within fourteen days of reporting settlement or by the trial date, whichever occurs first, and should dispose of all claims, crossclaims, counterclaims, etc.

If a case is dismissed pursuant to Civ.R. 41(A) on the eve of trial or the morning of trial and a jury has already been summoned, the plaintiff must bear the cost of summoning the jury.

If a case is settled on the eve of trial or the morning of trial, the cost of summoning the jury shall be borne equally by the parties or as set forth in the settlement entry.

18.     BANKRUPTCY: Upon a party filing a petition for bankruptcy in the Federal Court, counsel is to file with the Clerk of Courts a notice of said filing indicating the bankruptcy case number and the date of filing. The Common Pleas case shall then be stayed pursuant to 11 USCA §362. Respective counsel shall notify this Court when the debtor is discharged.

                                    /s/ JOSEPH GIBSON
                                    Joseph Gibson, Judge

CERTIFIED MAIL™



FIRST-CLASS MAIL

$06.60

ZIP 44077
041L11212373

mailed
05/04/2012
U.S. POSTAGE

7196 9008 9111 4090 1976

**Maureen G. Kelly**
CLERK OF COMMON PLEAS COURT
LAKE COUNTY COURTHOUSE, WEST ANNEX
25 N. PARK PLACE
PAINESVILLE, OHIO 44077-3416

12CV001097
7196 9008 9111 4090 197

MICHAELS STORES INC
C/C CSC LAWYERS INCORPORATING S
(CORPORATION SERVICE COMPANY)
50 W BROAD STREET SUITE 1800
COLUMBUS, OH 43215

# Exhibit B

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

WILLLIAM J. HENRY,

           Plaintiff,

vs.

MICHAEL'S STORES INC.

           Defendant.

CASE NO. 12-CV-001097

JUDGE JOSEPH GIBSON

## PLAINTIFF WILLIAM J. HENRY'S BRIEF IN OPPOSITION TO DEFENDANT MICHAELS STORES' MOTION TO DISMISS

## I.      Introduction

Plaintiff William Henry commenced the instant action on behalf of himself and all other similarly situated individuals who were overcharged by the Defendant Michaels. Compl at Introduction; ¶17. Defendant continuously advertised that its frames and framing services were on sale for 40% or more off its regular prices. Id. at Introduction; ¶11. However, because these products were never actually sold at full price but were incessantly sold at these advertised sale prices, customers did not receive at least a 40% discount when they purchased frames and framing services from Defendant. Id. at ¶¶11-14. In other words, although the Defendant told the Plaintiffs that they were receiving a discount from the Defendant's regular or everyday prices, the purported discounted price was actually the regular price.

These non-existent sales utilized by Defendant were the subject of a recent investigation by the New York Attorney General which resulted in Defendant paying a $1.8 million settlement to the state. Compl. ¶15. Attorney General Eric Schneiderman explained, "[f]or years, Michaels duped customers into thinking they were receiving huge discounts, when in fact, they were simply paying the regular store price. Through deceptive advertising practices, this company violated the law and took advantage of hardworking consumers trying to save money." Id.

Fictitious discounts are an unlawful marketing ploy that increase sales by misleading consumers: "'[t]he use of an advertised reference price with an advertised sale price focuses consumers' attention on the difference between the two prices. This leads to a perception of greater value [and] an increased likelihood of purchase.'" *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 17 (2004), quoting Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002). Indeed, Plaintiff went to Defendant's store because of its advertisements. Compl ¶7.

Because fictitious discounts are so commonly used, the attorney general's office and the courts have identified them as a deceptive practice under the Consumer Sales Practices Act ("CSPA"). OAC 109:4-3-12(E); *State ex rel. Rogers v. Indoor Environmental Air Consulting, LLC*, Franklin C.P. No. 08 CVH 03 4028, at ¶ 27 (Oct. 23, 2008); see also *Niresk Industries, Inc. v. Federal Trade Commission*, 278 F.2d 337, 340 (7th Cir. 1960) ("Misrepresentations of the regular and customary value of a product offered for sale and of savings afforded by an offered sale price of such product are unfair and deceptive practices[.]" and holding that it was deceptive

to advertise the "regular" price of an appliance as $39.95, when it ordinarily sold for between $6.95 and $8.95); *May Department Stores Co. v. State of Colorado,* 863 P.2d 967 (Colo. 1993) (advertising a fictitious "original" price for the purpose of subsequently advertising bargain reductions from that price is a deceptive practice); and, *State of Wisconsin v. Menard, Inc.,* 121 Wis. 2d 199, 201 (1984) (using the manufacturer's list price as the reference price in advertising a sale is a deceptive practice).

Plaintiff seeks redress for Ohio consumers and has asserted claims for violation of the Ohio CSPA, breach of contract, fraud, and unjust enrichment. Defendant's Motion to Dismiss these claims are without merit. Contrary to Defendant's arguments, and as is further explained herein, Plaintiff has suffered actual damages, identified Defendant's breach of the terms of the contract, is allowed to plead his unjust enrichment claim in the alternative to his breach of contract claim, and has pled fraud with the requisite particularity.

Defendant has failed to satisfy the high standard for dismissal pursuant to Civ. R. 12(b)(6) of demonstrating that it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *McWreath v. Cortland Bank,* 11th Dist. No. 2012-Ohio-3013, at ¶37 ("[a] complaint need not contain more than 'brief and sketchy allegations of fact to survive a motion to dismiss under the notice pleading rule." .... "The motion to dismiss is viewed with disfavor and should rarely be granted.") Defendant's Motion to Dismiss should be denied.

## II.    Plaintiff Has Alleged Damages Based on Defendant's Conduct

Plaintiff went to one of Defendant's stores after seeing advertisements noting that Defendant's frames and framing services were on sale for at least 40% off regular prices, paid for the framing service, but ultimately discovered that the "sale" was illusory. Compl ¶¶6-14. Plaintiff's damages are equivalent to the advertised discount of 40% that he did not receive. In other words, the approximate $200 that Plaintiff paid for Defendant's frame was not 40% off the normal retail price of the frame—it was Defendant's regular price. Plaintiff should only have paid 60% of this amount, and, therefore is entitled to damages of at least approximately $80.

Defendant contends that the "mere failure to receive a discount does not give rise to damages under established case law." D's Motion at 3. This is incorrect. "The term "damages" is defined as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Qualchoice, Inc., v. State Farm Ins. Co.,* 11th Dist. No. 2006-L-102, 2007-Ohio-584, at ¶17 (quoting Black's Law Dictionary (8Ed.Rev. 2004) 416). This was the case for Plaintiff here.

2

Plaintiff experienced a loss as he did not receive the benefit of his bargain – a 40% off discount. Plaintiff has stated a claim for damages under each of his causes of action.

## A. Plaintiff has Alleged Damages under Ohio's Consumer Sales Practices Act

The Ohio Consumer Sales Practice Act (R.C. 1345.01, et. seq.) prohibits suppliers from committing unfair or deceptive acts. *Whitaker v. M.T. Auto., Inc.* (2006), 111 Ohio St. 3d 177, 180. Unfair or deceptive acts are those "that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." Id, citing *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278. Defendant did just that by misleading Plaintiff to believe that he was receiving a major discount, when, in actuality, he received Defendant's regular price.

Such conduct is a violation of the CSPA. OAC 109:4-3-12(E) ("it is deceptive for a supplier in its out-of-store advertising to make any price comparison by the use of such terms as 'regularly _____, now _____,' '_____ per cent off,' ... unless: (a) The comparison is to the supplier's regular price[.]"). In *State ex rel Celebrezze v. Nationwide Warehouse & Storage, Inc.,* Case No. 90CVH086199 (Franklin Comm. Pleas, 1990), the defendant regularly advertised its products in newspapers, flyers, and television advertisements, routinely representing that its products were on sale when they were always posted at such prices. The court concluded that "a supplier's practice of advertising identical or similar sales on a continuous basis is an unfair or deceptive act or practice prohibited by the . . . Ohio Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(8)." See Conclusions of Law, at ¶5. See also *State of Ohio ex rel. Rogers v. Indoor Environmental Air Consulting, LLC,* Case No. 08 CVH 03 4028 (Franklin Comm. Pleas, 2008) (noting that the CSPA was violated where defendants advertised that a specific price advantage existed for a limited time, despite the fact that such offers ran continuously); *State of Ohio ex rel. Petro v. Craftmatic Organization, Inc.,* Case No. 05-CVH-06-06060 (Franklin Comm. Pleas 2005) (finding defendant violated the CSPA where it continuously represented that its mattresses were on sale for $250 off).[1] All of these cases required restitution to the consumers.

Because of Defendant's deceptive conduct, Plaintiff paid more money than he should have. This states a claim for damages. None of the defense cited cases change this fact.

---

[1] The opinions cited in this paragraph are collectively attached hereto as Exhibit A.

For instance in *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App. 3d 299, 2006-Ohio-2080, the plaintiff purchased a vehicle that had been rebuilt after sustaining fire damage, where the plaintiff was told about the fire damage and even witnessed the vehicle being rebuilt. The premise of the plaintiff's claim was that Progressive insured the vehicle at the time of the fire damage and issued a clean title on the vehicle, rather than a salvage title. But, the court determined that the issuance of a clean title was in conformity with applicable law. Further, the court explained, "[a]s we see it, the represented value and the actual value were the same: $ 8,500 for a used vehicle that was repaired after sustaining fire damage. At no time did Progressive represent the vehicle to be anything else." Id. at ¶26. In contrast, Defendant here represented that the value of its product was different: that it normally retailed for a price that was at least 40% more, when in actuality, it never did.

In *Whitaker v. M.T. Automotive, Inc.*, 9th Dist. No. 21836, 2004-Ohio-7166, the court reversed the jury's award of damages in favor of plaintiff on his CSPA claim regarding a revoked lease agreement, because the plaintiff failed to provide adequate proof of his damages. This is completely inapplicable here. For purposes of a motion to dismiss, this Court is testing only the sufficiency of the complaint, not analyzing the evidence ultimately presented at trial as in *Whitaker*. The court also found it determinative that the plaintiff had failed to mitigate his damages under the facts of the case, not an issue in this case. Id. at ¶27.

Defendant cites to several cases from other jurisdictions finding that plaintiffs do not have standing to pursue claims for a defendant's continuous sales practices under applicable consumer protection statutes. But these cases are entirely inapplicable, because Ohio courts and the Ohio Attorney General have already acknowledged that a valid cause of action exists for this identical conduct. See OAC 109:4-3-12(E); *State ex rel Celebrezze v. Nationwide Warehouse & Storage, Inc.*; *State of Ohio ex rel. Rogers v. Indoor Environmental Air Consulting, LLC*,; *State of Ohio ex rel. Petro v. Craftmatic Organization, Inc.*, supra. Thus, reliance on decisions from other jurisdictions is misplaced.

Lastly, Defendant argues that Plaintiff's CSPA claim must be dismissed because Plaintiff has failed to allege that the frame he purchased is worth less than he paid, that he would not have purchased the frame in absence of the advertisements, and that he could have purchased the same frame at another store for a lower price. Defendant cites absolutely no legal authority in support of its contentions that Plaintiff must demonstrate the value of the frame purchased or that it could

4

have been purchased elsewhere at a lower price. The CSPA prohibits advertising identical or similar sales on a continuous basis. There is no requirement that Plaintiff prove these additional facts, much less in his initial pleading. Further, Plaintiff has pled that he went to Defendant's store and purchased the frame there as a direct result of Defendant's advertisement. Compl. ¶7.

Therefore, Plaintiff has pled all necessary facts demonstrating that he is entitled to relief under the CSPA, and his claim should not be dismissed.

### B. Plaintiff has Alleged Damages From His Breach of Contract Claim

In Ohio, "the fundamental rule of law in establishing damages for breach of contract is that the 'plaintiff should, so far as monetary damages may do so, be placed in as good a position as he would have occupied had the defendant performed in accordance with the contract.'" *Schatten v. Mr. Steak, Inc.*, 489 F.2d 756 (6th Cir. 1974); *Textron Financial Corp. v. Nationawide Mutual Ins. Co.*, 115 Ohio App.3d 137, 144 (1996); see also *Victorian Room Banquet Center v. Bernard*, 11th Dist. No. 2006-T-0010, 2006-Ohio-4946, at ¶14 ("[A] party proving breach of contract is entitled to the "benefit of his bargain."). Here, no discount was provided. Plaintiff is entitled to recover the difference between the price that he paid, and the discounted price that was promised. Only if the Plaintiff receives the discount which he contracted for will he be in as good a position as if the Defendant had performed.

Stated another way, under the Restatement, "the injured party has a right to damages based on his expectation interest as measured by (a) the loss in value to him of the other party's performance caused by its failure or deficiency[.]" Restatement of the Law 2d, Contracts, § 347; *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 437 (3rd Dist. 1998) (adopting the Restatement's measure of damages for expectation interest). The Defendant's failure to provide Plaintiff with a 40% discount caused Plaintiff a loss of value. This states a claim for damages.

Defendant's cite to the case of *Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010) has no bearing here. *Kim* used Illinois law to conclude that the contract was for a discount from the fictitious price, and thus there was no breach. *Kim* at 364.

No Ohio court would reach the same decision because a customer cannot contract for a fictitious price. Under Ohio law, a "discount" must be provided off an actual price, not a fictitious one. See OAC 109:4-3-12(E); *State ex rel Celebrezze v. Nationwide Warehouse & Storage, Inc.*; *State of Ohio ex rel. Rogers v. Indoor Environmental Air Consulting, LLC,*; *State of Ohio ex rel. Petro v. Craftmatic Organization, Inc.*, supra. "'[I]n the interpretation of a

5

promise or agreement or a term thereof *** an **interpretation which gives a** reasonable, **lawful,** and effective meaning to all the terms is preferred to an interpretation which leaves a part ... unlawful[.]'" (Emphasis added.) *Kadamenos v. Harbour Homeowners Assoc.*, 193 Ohio App.3d 112, 2011-Ohio-1266, ¶ 22 (quotations omitted). Thus, no Ohio court could incorporate the ficitious price as part of the contract because doing so would incorporate an unlawful term – one which reflected a deceptive practice on the part of the retailer. Since Defendant did not provide 40% off of its actual regular price, there was breach and damages under Ohio law.

### C. Plaintiff Has Pled Damages to Support an Unjust Enrichment Claim

Defendant contends that Plaintiff is not entitled to damages under an unjust enrichment claim because Plaintiff received the frame for which he contracted. But this is not the issue here. Plaintiff's complaint is not about the frame itself, but the fact that the price of the frame was affirmatively represented by Defendant to be at least 40% off its normal price, when the frame was actually sold to Plaintiff at the regular retail value, without any discount. Therefore, Plaintiff is entitled to recoup at least 40% of his purchase price.

Unjust enrichment occurs where there is "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Ohio Cat v. A. Bonamase Leasing*, 2009-Ohio-1140, at ¶19. It would certainly be unjust to allow the Defendant to retain an additional 40% or more in profits based on its illusory sales tactics. Plaintiff and the putative class conferred a benefit upon Defendant by paying it the full retail price for framing and framing services, instead of the represented 40% off discounted prices.

Defendant also relies on *S&M Constructors v. Columbus* (1982), 70 Ohio St. 2d 69, 434 N.E.2d 1349, 1351, for the proposition that, absent fraud or bad faith, a plaintiff is not entitled to damages pursuant to an unjust enrichment claim "if he received from the other that which it was agreed between them the other should give in return." But Plaintiff paid *more* than what was contemplated in the parties' transaction: he was required to pay the full retail price, not the advertised price of at least 40% off the regular cost. Further, Defendant engaged in bad faith and fraud, as depicted in the complaint, by continuously advertising non-existent sales prices in order to lure customers into its stores.

### D. Defendant's Fraudulent Conduct Resulted in Plaintiff's Injury

In support of its argument that Plaintiff has not demonstrated damages associated with his fraud claim, Defendant relies exclusively on *Delahunt v. Cytodone Technologies*, 241 F. Supp. 2d 827 (S.D. Ohio 2003), in which the plaintiff brought a class action asserting numerous causes of action including fraud, arising from her purchase of a dietary supplement which plaintiff alleged was unsafe. In *Delahunt*, the plaintiffs made no claim they were overcharged for the product, which is the precise issue here, and furthermore, the plaintiffs in *Delahunt* failed to plead any injury, physical or otherwise, resulting from their purchase of the product. Unlike *Delahunt*, here Plaintiff clearly pled that he has been injured as a result of Defendant's fraudulent conduct by paying an excess of at least 40% for his frame. Compl. ¶¶ 10, 12, 14, 56, 61.

### III. Plaintiff has Pled All of the Elements of a Breach of Contract Claim

#### A. Plaintiff Alleged the Terms of the Contract

Defendant argues that it could not have breached its contract with Plaintiff, because the discount language was only included in advertisements, which were not part of the contract. This is incorrect for a couple of reasons.

Under Ohio law a contract can be written or oral, express or implied. Defendant seems to insist that there has to be "a writing" but each time a person does business with a retailer, they enter a binding contract for the sale of goods. There is no writing setting out terms and conditions, yet the contracts between the Plaintiffs and the Defendant are implied-in-fact, and the meeting of the minds is "shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." *Hummel v. Hummel,* 133 Ohio St. 520, 525 (1938). At this point, during the motion to dismiss stage, Plaintiff has alleged the existence of the contract and the term he contends was breached – the 40% off discount. Compl ¶42, 44. This states a claim.

Additionally, terms in advertisements *can* be part of the contract.[2] The defense cited case of *Alligood v. Proctor & Gamble Co.* (1991), 72 Ohio App. 3d 309 held an advertisement was

---

[2] Defendant posits that the Plaintiffs had to attach the written contract materials to the complaint under Civil Rule 10(D), which requires a written instrument to be attached to a complaint if a claim is founded on the instrument. An "instrument" is a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Black's Law Dictionary* 813 (8th Ed.2004). The definition of "instrument" is not *"any* writing" and does not cover ads. Further, the attempt to obtain *dismissal* as a sanction under

not part of the parties' contract, but the court found it significant that there was no price term included in the advertisement. Id. at 312. Similarly, courts have explained that "[i]f the parties' manifestations taken together as making up the contract, *when reasonably interpreted in the light of all the circumstances*, do not enable the court to determine what the agreement is and to enforce it without, in effect, 'making a contract for the parties,' no enforceable obligation results." *Conley v. Lindsay Acura* (1997), 123 Ohio App. 3d 570, 572-573. This rule has been used to prevent advertisements from becoming part of a contract where the terms were unclear. But here the term was clear—Defendant offered at least 40% off of the regular retail price of all frames and framing services. Compl. ¶¶10-11, 42. Advertisement terms which are "clear, definite, and explicit, and leaves nothing open for negotiation" can be part of the contract. *Stern v. Cleveland Browns Football Club* (Dec. 20, 1996), 11th Dist. No. 95-L-196, 1996 Ohio App. Lexis 5802, at *11; see also *McSweeney v. Jackson* (1996), 117 Ohio App. 3d 623, (finding newspaper advertisement containing price was an offer and plaintiff's down payment was an acceptance resulting in a contract).

Thus Plaintiff has alleged the key term of the complaint which was breached – Defendant's agreement to provide 40% off.

## B. Plaintiff Alleged a Breach of its Contract with Defendant

Pursuant to Civ. R. 8(A), a plaintiff is not required to plead the operative facts of their claims with particularity; instead a plaintiff must only provide a short and plain statement of the claim sufficient to give the defendant notice of the ground on which the claim is based. *McWreath* at ¶38. Here, Defendant breached the contract by charging Plaintiff the regular price at which it consistently sold its frames, instead of the contractually agreed-upon price of 40% or more off the regular retail price. Compl. ¶¶43-44. That is, Defendant failed to provide Plaintiff with the discounts it advertised. Compl. ¶44. Thus, Plaintiff has stated a specific breach of the parties' contract entitling him to relief.

---

Rule 10(D) is prohibited by Ohio law, which requires, at most, an order to attach a missing instrument, and not dismissal. *Fletcher v. University Hospitals of Cleveland,* 120 Ohio St.3d 167, 2008-Ohio-5379, at ¶ 11 ("Because there is no language in Civ.R. 10(D)(1) that the account or written instrument is required to establish the adequacy of the complaint, any failure to attach the required copies is properly addressed by a motion for a more definite statement under Civ.R. 12(E).)

## IV. Plaintiff's Unjust Enrichment Claim is not Barred By Contract

Defendant contends that Plaintiff's unjust enrichment claim must be dismissed, because the parties' transaction is governed by an express contract and a claim for unjust enrichment cannot be plead in the alternative. But this is an inaccurate statement of Ohio law.

Defendant relies on *Restivo v. Continental Airlines, Inc.*, 192 Ohio App. 3d 64, 2011-Ohio-219, at ¶12, for the proposition that an unjust enrichment claim cannot be pled alongside a breach of contract claim. However, this limited authority cited by Defendant holds only that "[w]here a valid contract exists between the parties, there can be no recovery under a theory of quantum meruit in the absence of fraud, bad faith, or illegality." All of these additional factors are present in this case. Defendant fraudulently represented to customers that its products were being discounted by at least 40% off regular prices. Compl. ¶¶56, 58. Defendant's motivation was to lure customers into its stores by misrepresenting to them that they were receiving a significant discount. Such conduct has already been determined to be unlawful under the CSPA.

Contrary to the limited authority cited by Defendant, numerous courts applying Ohio law have held that a plaintiff may plead both breach of contract and unjust enrichment claims. See *Special Visit Ministry v. Murphy*, 5th Dist. No. 06-CA-26, 2006-Ohio-3571, at ¶25 (stating plaintiff can plead claims under both breach of contract and unjust enrichment theories, but can only recover under one); *National Strategies, LLC v. Naphcare, Inc.*, 2011 U.S. Dist. Lexis 85841. at *28 (N.D. Ohio 2011) (unjust enrichment claim should not be dismissed as an alternative theory until the court decides the merits of the plaintiff's breach of contract claim); *King v. Hertz Corp.*, 2011 U.S. Dist. Lexis 35610, at *24 (N.D. Ohio 2011) (noting a plaintiff can plead unjust enrichment and breach of contract as alternative theories); *Brenner Marine v. Goudreau, Jr., Trust* (Jan. 13, 1995), 6th Dist. No. L-93-077, at *13, 1995 Ohio App. Lexis 62 (plaintiff can plead alternative theories of relief, but may only obtain one total recovery).

This is particularly true where the defendant disputes the existence or enforceability of the contract. *Astar Abatement, Inc. v. Cincinnati City School District*, 2012 U.S. Dist. Lexis 18422, at *14 (S.D. Ohio 2012); *Ortega v. Wells Fargo Bank*, 2012 U.S. Dist. Lexis 11409 at *29 (N.D. Ohio 2012) (party may plead unjust enrichment in the alternative to a breach of contract claim where the existence of the contract is at issue); *Taylor Excavating, Inc. v. Abele Tractor & Equipment, Co.*, 2012 U.S. Dist. Lexis 17163, at *24 (N.D. Ohio 2012). Here, Defendant disputes whether the sale price of at least 40%, a key component of Plaintiff's claims,

is an enforceable part of Plaintiff's contract. Therefore, as recognized by numerous other courts, Plaintiff must be allowed to plead unjust enrichment in the alternative.

V. **Plaintiff Has Pled Fraud with Sufficient Particularity To Satisfy Civ. R. 9(b)**

The Eleventh District has explained that in order to state a fraud claim with particularity, as required under Civ. R. 9(b), the plaintiff must state the "circumstances constituting fraud," [which] include the time, place and content of the false representation; the fact represented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." *Whelan v. Vanderwist of Cincinnati, Inc.*, 11th Dist. No. 2010-G-2999, 2011-Ohio-6844, at ¶13. These items are all alleged here: Plaintiff has alleged that shortly after reviewing Defendant's advertisements depicting that its frames and framing services were 40% off regular retail prices, he went to Defendant's store on September 21, 2011, and purchased a frame. Compl. ¶¶6, 8. The Defendant's advertised discount of 40% or more off regular prices was material to the transaction and the reason Plaintiff chose to go to Defendant's store. Compl. ¶¶7, 57. Defendant knew that its framing products were always advertised as being at least 40% off regular prices, and used this sales technique to dupe customers into patronizing its store. Compl ¶¶58-59. Plaintiff justifiably relied on Defendant's misrepresentations, paying an additional 40% or more for the frame he purchased. Compl. ¶¶ 60-61.

The purpose of Civ. R. 9(b) is to ensure "that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense." *Eiford v. Burt* (Sept. 2, 1994), 2nd Dist. No. 12392, 1994 Ohio App. Lexis 3792, at *18. Defendant has not argued that it is unable to answer the allegations based on the information provided. Plaintiff's fraud claim is adequately pled.

VI. **Conclusion**

For all of the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Michael R. Rudick, Esq. (#0087800)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391    (440) 352-3469 Fax
Email: *pperotti@dworkenlaw.com*
        *nfiorelli@dworkenlaw.com*
        *mrudick@dworkenlaw.com*

Counsel for Plaintiff William J. Henry

## PROOF OF SERVICE

A copy of the foregoing Brief in Opposition to Motion to Stay Discovery was served via email and/or regular mail on August 3, 2012 to:

Brandon D. R. Dynes, Esq.
Todd C. Hicks, Esq.
Ezio A. Listati, Esq.
THRASHER, DINSMORE & DOLAN
100 7th Avenue, Suite 150
Chardon, Ohio 44024
*bdynes@tddlaw.com*
*thicks@tddlaw.com*
*elistati@tddlaw.com*

Counsel for Michaels Stores, Inc.

Nicole T. Fiorelli, Esq. (#0079204)
DWORKEN & BERNSTEIN CO., L.P.A.

Counsel for Plaintiff William J. Henry

RECEIVED

Aug 15  8 56 AM '90
ATTY. GEN.
CONSUMER PROTECTION
DIV.

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

90CVH08-6199

STATE OF OHIO, ex rel.          )
ANTHONY J. CELEBREZZE, JR.      )   CASE NO.
ATTORNEY GENERAL                )
30 East Broad Street            )   JUDGE
State Office Tower - 25th Floor )
Columbus, Ohio 43266-0410       )
                                )
            Plaintiff           )
                                )
        v.                      )
                                )
NATIONWIDE WAREHOUSE &          )   CONSENT JUDGMENT
STORAGE, INC.                   )
2246 S. Hamilton Road           )
Suite 101                       )
Columbus, Ohio 43227            )
                                )
            Defendant           )

RECEIVED

AUG 15 1990

ATTORNEY GENERAL OF OHIO
CONSUMER FRAUDS & CRIMES
PUBLIC INSPECTION FILE

PREAMBLE

This matter came to be heard upon the request of all parties hereto. By signing this entry, the Defendant submits to the personal jurisdiction of this Court and consents to the entry of this judgment. Without admitting or denying any allegations giving rise to a determination that violations of Ohio's Consumer Sales Practices Act and consumer laws have occurred, the Defendant hereby consents to the Court's finding of the following facts and conclusions of law and the imposition of the order as follows:

FINDINGS OF FACT

1. Defendant Nationwide Warehouse & Storage, Inc. is an Ohio corporation engaged in the business of soliciting for sales and selling furniture in stores in Columbus, Cincinnati, Cleveland and Dayton, Ohio.

EXHIBIT
A

2. Defendant Nationwide Warehouse & Storage, Inc. regularly advertises its furniture and bedding in newspapers, flyers and television advertisements.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter, issues, and parties to the Consent Judgment.

2. The business practices of Defendant Nationwide Warehouse & Storage, Inc. are governed by the Consumer Sales Practices Act, R.C. §1345.01 et seq.

3. Defendant Nationwide Warehouse & Storage, Inc. is a supplier within the meaning of R.C. §1345.01(C) in that it engages or has engaged in the business of effecting or soliciting consumer transactions.

4. A supplier's practice of advertising "free layaway" without clearly and conspicuously disclosing all terms and conditions of the "free layaway" is an unfair or deceptive act or practice prohibited by the Exclusions and Limitations in Advertisements Rule, O.A.C. §109:4-3-02(A)(1) and §109:4-3-02(B), and by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A).

5. A supplier's practice of advertising identical or similar sales on a continuous basis is an unfair or deceptive act or practice prohibited by the Price Comparisons Rule, O.A.C. §109:4-3-12(D) and the Ohio Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(8).

6. A supplier's practice of, in the course of its regular advertising, using the term "public notice" to create a false impression in the minds of consumers that the supplier is having a special sale to which the public is invited, when in reality the supplier operates a retail store with regular weekly hours is an unfair or deceptive act or practice prohibited by the Bait Advertising/Unavailability of Goods Rule, O.A.C. §109:4-3-03(B)(2), and the Ohio Consumer Sales Practices Act, R.C. §1345.02(A).

7. A supplier's practice of representing in its advertisements that it is a hotel-motel furniture liquidator or other similar specialty retailer when such is not the case is an unfair or deceptive act or practice prohibited by the Distress Sale Rule, O.A.C. §109:4-3-17(A)(1), the Price Comparisons Rule, O.A.C. §109:4-3-12(C)(1), the Bait Advertising/Unavailability of Goods Rule, O.A.C. §109:4-3-03(B)(2), and the Ohio Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.02(B)(4), and R.C. §1345.02(B)(8).

8. A supplier's practice of placing advertisements in the classified advertisement section of newspapers offering the take over of unclaimed layaway as an inducement to consumers to come to a supplier's store where they are then solicited to purchase furniture, and not shown any unclaimed layaway products, is an unfair or deceptive act or practice prohibited by the Bait Advertising/Unavailability of Goods

3

Rule, O.A.C. §109:4-3-03(B)(2), and the Ohio Consumer Sales Practices Act, R.C. §1345.02(A).

9. A supplier's practice of representing that its merchandise is covered by warranties, and then failing to provide consumers with written copies of the warranties is an unfair or deceptive act or practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(10).

10. A supplier's practice of delivering damaged goods to consumers and refusing to promptly pick up and replace the damaged goods unless the consumer pays an additional delivery charge is an unfair or deceptive act or practice in violation of the Ohio Consumer Sales Practices Act, R.C. §1345.02(A).

## ORDER

For the purpose of effecting this Consent Judgment, it is therefore ORDERED, ADJUDGED, and DECREED that:

A. Nationwide Warehouse & Storage, Inc., under this or any other name, its agents, servants, representatives, salespersons, employees, successors and assigns, and all persons acting in concert and participation with it, directly or indirectly, through any corporate device, partnership, or association, in connection with any consumer transaction, are hereby permanently enjoined from:

    1) Advertising "free layaway" without clearly and conspicuously disclosing all terms and conditions of the "free layaway";

4

2) Advertising identical or similar sales on a continuing basis;

3) Using the term "public notice" to create a false impression in the minds of consumers that the Defendant is having a special sale to which the public is invited;

4) Representing that it is a hotel-motel furniture liquidator or other similar specialty retailer if such is not the case;

5) Placing advertisements in the classified advertisement section of newspapers offering take over of unclaimed layaway, and not offering any specific unclaimed layaway goods when a consumer responds to the advertisement and comes to Defendant's stores;

6) Representing that its merchandise is covered by warranties and failing to provide consumers with written copies of the warranties;

7) Delivering or arranging for delivery of damaged merchandise to consumers and refusing to promptly pick up or arrange for the pick up and replacement of the damaged merchandise unless the consumer pays an additional delivery charge;

8) Making any false or misleading statement in its advertising relating to the character of the Defendant's stores or the reasons that merchandise is being offered for sale which would be in violation of the Consumer Sales Practices Act and Ohio

5

Administrative Code Sections which are cited in the Conclusions of Law section of this Consent Judgment.

B. It is further ORDERED that this Consent Judgment shall not be deemed to preclude any investigation or enforcement action against the Defendant under any legal authority granted to the Ohio Attorney General for actions not disposed of by this Consent Judgment. This Consent Judgment shall in no way exempt the Defendant from any other obligation imposed by law, and nothing contained herein shall relieve the Defendant of any legal responsibility for any acts or practices engaged in by the Defendant.

C. It is further ORDERED that the Defendant is to, for those consumers identified in attachment "A" of this Consent Judgment, make full restitution to the consumers or pay them a lump sum of Two Hundred Dollars ($200.00) at the option of the consumers. Full restitution is to include all costs paid by the consumer in purchasing furniture or bedding, including delivery fees. Defendant shall provide the Plaintiff with a certified check payable to the Attorney General in the full amount of consumer restitution due the consumers listed in attachment "A" within ten (10) days of the time Plaintiff presents Defendant a list which states the options that the consumers have chosen and the total amount of restitution due under the above defined terms. If Defendant desires, it may, at its own expense and within the above-defined ten (10) day period, pick up

6

the furniture from the consumers that have chosen the full restitution option, and the consumers must make available such furniture to Defendant before receiving the appropriate restitution.

D.  It is further ORDERED that the Defendant is to pay, to each consumer who files a complaint within twenty (20) days of the filing of this Consent Judgment relating to a purchase or down-payment for a purchase of Defendant's bedding or furniture which is reasonably determined by the Attorney General to fall within the practices addressed in this Consent Judgment, Two Hundred Dollars ($200.00) or otherwise satisfy that consumer's complaint should all parties agree thereto. Defendant shall provide the Plaintiff with a certified check payable to the Attorney General in the full amount due under this subsection within ten (10) days of the time Plaintiff submits a list of any complaints received pursuant to this subsection to the Defendant. A complaint is deemed received by the Attorney General if it is post-marked within twenty (20) days of the filing of this Consent Judgment.

E.  It is further ORDERED that the Defendant is to pay a civil penalty of Forty Thousand Dollars ($40,000.00), Fifteen Thousand Dollars ($15,000.00) of such penalty is to be suspended upon the condition that the Defendant not violate the terms of this Consent Judgment. Payment shall be paid by tendering a certified check in the amount payable to the

7

Attorney General within seven (7) days of the filing of this Consent Judgment.

F. It is further ORDERED that the Defendant is to pay the amount of Five Thousand Dollars ($5,000.00) to reimburse Plaintiff for the costs of investigating this matter. Payment shall be made by tendering a certified check in the full amount payable to the Attorney General within seven (7) days of the filing of this Consent Judgment.

G. It is further ORDERED that the Defendant shall pay all court costs associated with this matter.

H. It is further ORDERED that this Consent Judgment is under the continuing jurisdiction of this Court.

_____
JUDGE

APPROVED:

ANTHONY J. CELEBREZZE, JR.
Attorney General

_____
DIANNE GOSS PAYNTER (PAY 08)
Assistant Attorney General
Chief, Consumer Frauds & Crimes

BY: _____

TITLE: _____
NATIONWIDE WAREHOUSE & STORAGE, INC.

_____
DAVID M. DEMBINSKI (DEM 05)
Assistant Attorney General
Consumer Frauds & Crimes
30 East Broad Street
State Office Tower — 25th Floor
Columbus, Ohio 43266-0410
614/466-8831

Counsel for Plaintiff

5242C

_____
KEITH E. WHANN (WHA-01)
Schottenstein, Zox & Dunn
41 S. High Street
Suite 2600
Columbus, Ohio 43215
614/221-3211

Counsel for Defendant

8

ATTACHMENT—"A"

| Last Name | First Name | ADDRESS | City | State | Zip |
|---|---|---|---|---|---|
| Albright | Anne | 308 Franklin Ct. Apt. C | Fairborn | OH | 45324 |
| Barrow | Joanne | 2630 Jamestown Road | Rocky River | OH | 44116 |
| Bell | James | 27 Livingston Avenue | Dayton | OH | 45403 |
| Blue | Cindy | 686 Riverview Drive, Apt. 37 | Columbus | OH | 43202 |
| Braidich | Rose | 6506 Liberty Bell Drive | Brookpark | OH | 44142 |
| Brett | Philip | 2184 Cottage Grove | Cleveland Hts. | OH | 44118 |
| Chisholm | Jacklyn | 17116 Judson Drive | Cleveland | OH | 44128 |
| Coleman | Patricia | 5647 Elgin Roof | Trotwood | OH | 45426 |
| Czerski | Cindy | 4991 Lear Nagle | N. Ridgeville | OH | 44039 |
| Ethridge | David | 4633 Rocky River Drive | Cleveland | OH | 44135 |
| Hounestine | Mary | 940 E.N. Broadway Apt. C-32 | Columbus | OH | 43224 |
| Ladanyi | Bill | 3292 Beechwood Avenue | Cleveland Hts. | OH | 44118 |
| Lauter | Pamela | 9404 North Church Apt. 507 | Parma Heights | OH | 44130 |
| Meeks | Linda | 2478 White St. #10 | Cincinnati | OH | 45214 |
| Morgan | Michele | 26590 Parklawn Drive #1 | Euclid | OH | 44132 |
| Newman | Paul | 9831 #2 Memphis Avenue | Brooklyn | OH | 44144 |
| Northrup | Karla | 1444 Devonhurst Drive | Columbus | OH | 43232 |
| Nunn | Viola | 8920 Carnegie #415 | Cleveland | OH | 44106 |
| Osborn | Judy | 123 S. Old Mill Road | Union | OH | 45322 |
| Paul | Patricia | 3260 East 130th | Cleveland | OH | 44120 |
| Polk | Deborah | 2151 Fireton #5 | Cincinnati | OH | 45206 |
| Powell-Hunter | Denise | 3726 Guam Court | Cincinnati | OH | 45236 |
| Roe | June | 239 Oak Street | Dayton | OH | 45410 |
| Rudolph | Denny | 2366 Walden Glen Center, Apt. B | Cincinnati | OH | 45231 |
| Sexton | Lori | 4662 Tamarack Blvd. Apt. A6 | Columbus | OH | 43229 |
| Slonac | Theresa | 4416 McGregor Avenue #2 | Newburgh Hts., | OH | 44105 |
| Spangler | Mary | 7475 Silver Lane | Dayton | OH | 45414 |
| Sparks | Ralph | 7810 Windham Rd. | Tipp City | OH | 45371 |
| Tabor | Carolyn | 165 E. Gates Street | Columbus | OH | 43206 |
| Waters | Sharon | 5103 Bellefontaine Road | Huber Hts., | OH | 45424 |
| Woodward | Fred | 733 Parkview Drive | Taylor Mill | KY | 41015 |
| Wright | Linda | 362 Second St. | Morrow | OH | 45152 |
| Zamary | Robert | 1480 Slade Avenue #201 | Columbus | OH | 43235 |

5425C

RECEIVED

Aug 15  8 56 AM '90

IY. GEN.
CONSUMER PROTECTION
DIV TOT

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

STATE OF OHIO, EX REL. )
ANTHONY J. CELEBREZZE, JR. )
ATTORNEY GENERAL )
30 East Broad Street )
State Office Floor — 25th Floor )
Columbus, Ohio 43266-0410 )
)
Plaintiff )
)
v. )
)
NATIONWIDE WAREHOUSE & )
STORAGE, INC. )
2246 S. Hamilton Road )
Suite 101 )
Columbus, Ohio 43227 )
)
Defendant )
)

90CVH08-6199

CASE NO.

JUDGE:

COMPLAINT

Now comes the Plaintiff, the State of Ohio, by and through

its counsel, Attorney General Anthony J. Celebrezze, Jr., and

for its complaint against the Defendant, Nationwide Warehouse &

Storage, Inc., alleges as follows:

JURISDICTION

1. Plaintiff, State of Ohio, by and through the Attorney
   General of Ohio, Anthony J. Celebrezze, Jr. brings this
   action in the public interest and on behalf of the State of
   Ohio under the authority vested in him by §1345.01 to
   §1345.13 of the Ohio Revised Code, the Consumer Sales
   Practices Act.

2. Defendant, Nationwide Warehouse & Storage, Inc., is an Ohio
   corporation engaged in the business of soliciting for sales
   and selling furniture in stores in Columbus, Cincinnati,
   Cleveland and Dayton.

3. ~~Defendant is a "supplier" within the meaning of R.C.~~
§1345.01(C) in that the Defendant has engaged in the
business of effecting or soliciting "consumer transactions"
as that term is defined in R.C. §1345.01(A).

4. Defendant's actions hereinafter described have occurred in
the State of Ohio and Franklin County.

<u>STATEMENT OF CLAIMS</u>

<u>EXCLUSIONS AND LIMITATIONS</u>

<u>COUNT ONE</u>

5. The allegations contained in paragraphs one through four
(1-4) are incorporated by reference as if fully written
herein.

6. Defendant advertises its furniture and bedding in
newspapers, flyers and television advertisements that state
"Free Layaway" is available. The advertisements do not
state that no cash refunds will be made on layaway goods
after ten days.

7. The act described in paragraph six (6) is an unfair or
deceptive act or practice prohibited by the Exclusions and
Limitations in Advertisements Rule, O.A.C.
§109:4-3-02(A)(1) and §109:4-3-02(B).

8. The act described in paragraph six (6) is an unfair or
deceptive act or practice prohibited by the Ohio Consumer
Sales Practices Act, R.C. §1345.02(A).

2

## COUNT TWO

9. The allegations contained in paragraphs one through four (1-4) are incorporated by reference as if fully rewritten.

10. Defendant advertises in newspapers, flyers, and television advertisements on a regular basis. Defendant has advertised that sales are "3 days only," or other similar duration yet run identical or similar advertisements alleging the same "3 days only" on a repeated basis.

11. The act described in paragraph ten (10) is an unfair or deceptive act or practice prohibited by the Price Comparisons Rule, O.A.C. §109:4-3-12(D).

12. The act described in paragraph ten (10) is an unfair or deceptive act or practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(8).

## MISREPRESENTATIONS IN ADVERTISEMENTS

## COUNT THREE

13. The allegations contained in paragraphs one through four (1-4) are incorporated by reference as if fully written herein.

14. Defendant, in the course of its regular advertising, represents that the advertisement is a "public notice." The reference "public notice" creates a false impression to consumers that Defendant is having a special sale in which the public is invited, when in reality Defendant is a

3

retail furniture store with regular weekly hours.

15. The act described in paragraph fourteen (14) is an unfair or deceptive act or practice prohibited by the Bait Advertising/Unavailability of Goods Rule, O.A.C. §109:4-3-03(B)(2).

16. The act described in paragraph fourteen (14) is an unfair or deceptive act or practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A).

### COUNT FOUR

17. The allegations contained in paragraphs one through four (1-4) are incorporated by reference as if fully written herein.

18. Defendant, in the course of its regular advertising, represents that it is a hotel-motel furniture liquidator. The representation that the Defendant is a hotel-motel furniture liquidator gives consumers the false impression that the Defendant sells large amounts of furniture to hotels and motels or is liquidating furniture used by hotels and motels, when in reality Defendant is not a hotel-motel furniture liquidator.

19. The act described in paragraph eighteen (18) is an unfair or deceptive act or practice prohibited by the Distress Sale Rule, O.A.C. §109:4-3-17(B)(1), the Price Comparisons Rule, O.A.C. §109:4-3-12(C)(1), and the Bait Advertising/Unavailability of Goods Rule, O.A.C. §109:4-3-03(B)(2).

4

20. The act described in paragraph eighteen (18) is an unfair or deceptive act or practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.02(B)(4), and R.C. §1345.02(B)(8).

### COUNT FIVE

21. The allegations contained in paragraphs one through four (1-4) are incorporated by reference as if fully rewritten herein.

22. Defendant regularly places advertisements in the classified advertisement section of newspapers stating "take over unclaimed layaway balance". The ads are intended to induce consumers to come to the Defendant's stores where they can be solicited to purchase furniture, and are not for any specific unclaimed layaway products.

23. The practice described in paragraphs twenty-two (22) is an unfair or deceptive practice prohibited by the Bait Advertising/Unavailability of Goods Rule, O.A.C. §109:4-3-03(B)(2).

24. The practice described in paragraphs twenty-two (22) is an unfair or deceptive practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(4).

### MISREPRESENTATION OF WARRANTY

### COUNT SIX

25. The allegations contained in paragraphs one through four (1-4) are incorporated by reference as if fully written herein.

5

26. Defendant has represented that its mattresses are covered by warranties up to twenty years in duration, and has failed to provide consumers with written copies of the warranty.

27. The act described in paragraph twenty-six (26) is an unfair or deceptive act or practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(1) as determined by Ohio Courts. Said act and practice was committed after such decisions were available for public inspection pursuant to R.C. §1345.05(A)(3).

## ADDITIONAL DELIVERY CHARGE FOR REPLACED FURNITURE

### COUNT SEVEN

28. The allegations contained in paragraphs one through four (1-4) are incorporated by reference as if fully written herein.

29. Defendant has delivered or arranged for the delivery of damaged furniture and bedding to consumers and will not pick up and promptly replace or arrange for the pick up of the damaged furniture or bedding unless the consumer pays an additional delivery charge. The consumer is at no time prior to the transaction or sale informed that damaged furniture will be replaced only at an additional delivery expense to the consumer.

30. The act described in paragraph twenty-nine (29) is an unfair or deceptive act or practice prohibited by the Ohio Consumer Sales Practices Act, R.C. §1345.02(A).

WHEREFORE, Plaintiff requests that this Court:

6

1. ISSUE a permanent injunction enjoining the Defendant and its officers, partners, agents, servants, representatives, salespeople, employees, successors or assigns, under the names it presently uses or any other name, through any corporate or other device, and those in active concert and participation with the Defendant directly or indirectly, from engaging in the acts and practices of which Plaintiff complains.

2. ORDER Defendant to provide restitution to all consumers who have filed complaints with the Attorney General or who hereinafer file complaints regarding the facts alleged herein.

3. ISSUE a declaratory judgment declaring that each act or practice complained of in Counts One through Seven of this complaint violates the Ohio Consumer Sales Practices Act and Substantive Rules contained in the Ohio Administrative Code in the manner set forth in this complaint.

4. ASSESS, FINE and impose upon Defendant a civil penalty of Twenty Five Thousand Dollars ($25,000.00) for each appropriate violation described herein, pursuant to R.C. §1345.07(D).

5. GRANT Plaintiff its attorney fees, costs of investigation, and costs incurred in bringing this action.

6. GRANT such other relief as the Court deems to be just, equitable, and appropriate.

7

Respectfully submitted,

ANTHONY J. CELEBREZZE, JR.
Attorney General

DIANNE GOSS PAYNTER (PAY 08)
Assistant Attorney General
Chief, Consumer Frauds & Crimes


DAVID M. DEMBINSKI (DEM 05)
Assistant Attorney General
Consumer Frauds & Crimes
30 East Broad Street
State Office Tower - 25th Floor
Columbus, Ohio 43266-0410
614/466-8831

Counsel for Plaintiff

4194C

8

D8370 - M65

TERMINATION NO. 18
BY. _____

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

**FINAL APPEALABLE ORDER**

| | |
|---|---|
| STATE OF OHIO, *ex rel* | ) |
| NANCY H ROGERS | ) |
| ATTORNEY GENERAL OF OHIO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| INDOOR ENVIRONMENTAL AIR | ) |
| CONSULTING, L L C | ) |
| | ) |
| Defendants. | ) |

CASE NO. 08 CVH 03 4028

JUDGE LYNCH

<u>FINAL JUDGMENT
ENTRY AND ORDER</u>

CLERK OF COURTS    2008 OCT 23  PM 3: 33    COMMON PLEAS COURT
FRANKLIN CO. OHIO
FILED

This matter is before the Court upon Plaintiff's Motion for Damages and Other Requested Relief, after default judgment was granted by this Court on July 7, 2008  Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, have failed to file answers or any other responsive pleadings to Plaintiff's Complaint, and have failed to respond to the motion for relief or appear before the Court in any manner  Based on the Order for default judgment, Plaintiff's Complaint, Plaintiff's motion and supporting affidavits, the Court finds the motion well taken and hereby grants Plaintiff's Motion for Damages and Other Requested Relief

The Court hereby enters judgment in favor of the Plaintiff, the State of Ohio, and against the Defendants, Indoor Environmental Air Consulting, L L.C. and Toby Tobin, as follows

<u>FINDINGS OF FACT</u>

1    Defendant Indoor Environmental Air Consulting, L L C  is a limited liability company registered with the Ohio Secretary of State to do business in Ohio under that name, and under the trade name Buckeye Air Care, with its primary place of business located at

RECEIVED
ATTORNEY GENERAL OF OHIO

NOV 0 4 2008

CONSUMER PROTECTION SECTION
PUBLIC INSPECTION FILE

1.    5744 Westbourne Avenue, Columbus, Ohio 43213. The business entities have been registered with the Ohio Secretary of State since February of 2005

2.    Defendant Toby Tobin is an individual who was last known to reside at 398 W Columbus Street, Pickerington, Ohio 43147

3.    Defendant Toby Tobin, at all relevant times hereto, dominated, controlled, and directed the business activities and sales conduct of Defendant Indoor Environmental Air Consulting, L L C causing, personally participating in, or ratifying the acts and practices of Defendant Indoor Environmental Air Consulting, L L C as described in the complaint

4.    Defendant Toby Tobin, was at all relevant times hereto, the owner and operator of Defendant Indoor Environmental Air Consulting, L.L.C (collectively referred to herein as "Defendants"), engaged, directly or indirectly, in the solicitation and sale of home improvement goods and services to individuals for personal, family or household use

5.    Defendants are in the business of providing air duct cleaning goods, repairs and services to consumers

6.    Defendants placed out-of-store advertisements in local newspapers or circulars offering their air duct cleaning services at reduced prices. The prices advertised for air duct cleaning service typically ranged from $49.95 to $99.99 for a service that the advertisement often stated that the service was a "value of $199.95" Many of the advertisements contained language such as "one week only", "two weeks only" or contained offer expiration dates when in fact, the advertisements were published on a continuous basis over a period of many months

7.    Upon arrival at the consumers' homes, Defendants attempted to sell or did sell to consumers additional services by disparaging the advertised air duct cleaning services

2

which consumers initially request or informed consumers that the advertised air duct cleaning services would not be beneficial without the purchase of additional services The additional services resulted in total charges to consumers ranging from hundreds and sometimes thousands of dollars

8     Defendants failed at the time of the initial face to face contact and prior to the commencement of any repairs or services, to provide consumers with a written form that included the anticipated cost of the repairs or services and clear and conspicuous disclosures regarding the consumers' right to an estimate

9     Defendants failed to orally inform consumers at the time of the initial face to face contact and prior to the commencement of any repairs or services, of the consumers' right to receive a written or oral estimate

10    Defendants provided estimates only after technicians set up their equipment inside consumers' homes, cut holes in duct-work, and/or disassembled vents, ducts, furnaces, and/or air conditioners   As a result, consumers felt compelled to pay for additional services above the advertised air duct cleaning package price to avoid being left with disassembled heating and/or cooling systems

11    Defendants performed repairs or services that were not authorized by consumers prior to commencing work

12    Defendants charged consumers for repairs or services that were not authorized by consumers prior to commencing work

13    Defendants made false or misleading statements to consumers in an effort to sell goods, repairs or services

14 Defendants sold mildicide applications to consumers by making representations to consumers they had mold in their duct-work without possessing any scientific evidence to substantiate such representations

15 Defendants failed to provide consumers with a properly completed three-day right to cancel notice as required by the Home Sales Solicitation Act, R C 1345 23

16 Defendants commenced services during the time in which the buyer may cancel in violation of the Home Sales Solicitation Act, R C 1345 22

17 · Defendants received payments from consumers for services rendered, but delivered services in a shoddy, substandard or unworkmanlike manner and failed to correct such work Defendants failed to adequately cover openings in vents and ducts prior to the cleaning of those ducts This failure to cover vents and ducts resulted in the scattering of dust and debris out of the vents into the consumers' homes

18 All facts above have routinely occurred in the two years prior to this lawsuit

## CONCLUSIONS OF LAW

19 The action was brought pursuant to the Consumer Sales Practices Act, R C 1345 01 et seq

20 The Ohio Attorney General is the proper party to commence these proceedings under the authority provided her under R C 1345 07 and by virtue of her statutory and common law authority to protect the interests of the citizens of the state of Ohio

21 Jurisdiction over the subject matter of this action lies with this Court pursuant to R C 1345.04 of the Ohio Consumer Sales Practices Act

22 Defendants Indoor Environmental Air Consulting, L L C and Toby Tobin, as described below, are "suppliers" as that term is defined in R C 1345 01(C), as the Defendants were

4

at all times relevant herein, engaged in the business of effecting consumer transactions by soliciting and selling home improvement services to individuals in Franklin County and other counties in the State of Ohio for purposes that were primarily personal, family or household within the meaning specified in R.C 1345 01(A) and (D).

23. Defendants, as described below, were at all relevant times hereto "sellers" engaged in the business of effecting "home solicitation sales" by soliciting and selling home improvement services to consumer "buyers" at their personal residences in Franklin County and various other Ohio counties for purposes that were primarily personal, family or household within the meaning specified in R C 1345 21(A) and (E) '

24 Defendants, Indoor Environmental Air Consulting, L L.C and Toby Tobin, committed unfair or deceptive acts or practices in violation of R C 1345.02(B)(8) and Ohio Adm Code 109 4-3-03(B)(2) by making deceptive offers for the sale of services as a means to secure first contact with consumers, in that Defendants advertised that a specific price advantage existed for a limited time only when the offers actually ran continuously, rendering the limited time provision of the specific price advantage to be untrue and illusory

25 Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed unfair or deceptive acts or practices in violation of R C 1345 02(B)(8) and Ohio Adm Code 109,4-3-03(B)(3) by making an offer of sale of services at a specific price advantage when in fact, Defendants informed consumers that the services available at the specific price advantage would not be beneficial unless the consumers also purchased additional goods and services

26    Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed unfair or deceptive acts or practices in violation of R.C. 1345 02(A) and Ohio Adm Code 109:4-3-12(D)(1) by indicating or implying in its out-of-store advertising that a sale, bargain or offering of a price reduction would terminate within a given or anticipated period of time without in fact terminating within that period indicated

27    Defendants, Indoor Environmental Air Consulting, L L C. and Toby Tobin, committed unfair or deceptive acts or practices in violation of R C 1345 02(A) and Ohio Adm Code 109 4-3-12(E) by making price comparisons in its out-of-store advertising when the comparisons were not to the Defendants' regular prices at which they openly and actively sold services to the public on a continuous basis for a substantial period of time

28.    Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed unfair or deceptive acts or practices in violation of R C 1345 02(A) and Ohio Adm Code 109 4-3-12(I) by using in its out-of-store advertising terms that indicated a savings or reductions in prices when the savings or reductions were not meaningful reductions or the actual amounts of percentages of savings were not clearly or conspicuously indicated in the advertisements

29.    Defendants, Indoor Environmental Air Consulting, L L C. and Toby Tobin, committed unfair or deceptive acts or practices in violation of R C 1345 02(A) and Ohio Adm Code 109 4-3-05(A) by failing to provide the consumer with a written estimate choice language form at the time of the initial face to face contact and prior to the commencement of any repair or service, that included the anticipated cost of the repairs or services and clear and conspicuous disclosures regarding the consumers' right to an estimate

6

30    Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed
      unfair or deceptive acts or practices in violation of R C 1345 02(A) and Ohio Adm Code
      109 4-3-05(B) by failing to orally inform consumers at the time of the initial face to face
      contact and prior to the commencement of any repair or service, of the consumer's right
      to receive a written, oral or no estimate

31    Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed
      unfair or deceptive acts or practices in violation of R C 1345 02 and Ohio Adm Code
      109 4-3-05(D)(6) by charging for repairs or services that were not authorized by the
      consumer

32    Defendants, Indoor Environmental Air Consulting, L L.C. and Toby Tobin, committed
      unconscionable acts or practices in violation of R C 1345 03(B)(6) by knowingly making
      misleading statements of opinion on which consumers were likely to rely to their
      detriment

33  · Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed
      unfair or deceptive acts or practices in violation of R C 1345 02(A) and Ohio Adm Code
      109 4-3-10(A) by making oral or written statements of fact, that would cause a
      reasonable consumer to believe the statements were true, without possessing or relying
      upon a reasonable basis in fact, such as scientific data, substantiating the statements, in
      that Defendants told consumers they had mold without first testing whether substances
      found were in fact mold.

34    Defendants, Environmental Air Consulting, L L C and Toby Tobin, committed unfair
      and deceptive acts and practices in violation of R C 1345 02(A) and (B)(2)(5) by
      representing that work would meet a certain standard, quality or style when it did not

7

D8370 - M72

35   Defendants, Environmental Air Consulting, L L C and Toby Tobin, committed unfair and deceptive acts and practices in violation of R C 1345.02(A) by performing shoddy, substandard and unworkmanlike services in connection with consumer transactions and then failing to correct such work

36   Defendants, Indoor Environmental Air Consulting, L L C and Toby Tobin, committed unfair or deceptive acts or practices in violation of R C 1345 02, R C 1345 23(B)(3), and Ohio Adm Code 109 4-3-11(A)(5) by failing to provide a three-day right to cancel that complies with the Home Solicitation Sales Act in that Defendants failed to properly complete the form with the date by which the buyer may give notice of cancellation

37.   Defendants, Indoor Environmental Air Consulting, L L C, and Toby Tobin, committed unfair or deceptive acts and practices in violation of R C 1345 02, R.C. 1345 22, and Ohio Adm Code 109 4-3-11(A)(5) in that Defendants commenced performance of services during the time in which the buyer could cancel

38   The acts and practices described in the paragraphs above have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R C 1345 01 et seq and the Home Solicitation Sales Act, R C 1345 23 et seq Defendants committed said violations after such decisions were available for public inspection

THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED that

1   Defendants, their officers, partners, agents, servants, representatives, salespersons, employees, successors or assigns, and all persons acting in concert and participation with them, directly or indirectly, through any corporate device, partnership or association, in connection with any consumer transaction, are herby PERMANENTLY ENJOINED from engaging in acts and practices that violate the Consumer Sales Practices Act, R C

8

1345 01 et seq, including but not limited to those acts and practices described in this Order's Conclusions of Law.

2  Defendants, their officers, partners, agents, servants, representatives, salespersons, employees, successors or assigns, and all persons acting in concert and participation with them, directly or indirectly, through any corporate device, partnership or association, in connection with any consumer transaction, are hereby PERMANENTLY ENJOINED from engaging in any consumer transactions in the State of Ohio until this judgment and all other judgments arising out of consumer transactions are satisfied in their entirety

3  It is hereby DECLARED that the acts set forth above in the Conclusions of Law violate the Ohio Consumer Sales Practices Act, R C 1345 01 et seq

4  Defendants are ordered to pay, as reimbursement to persons damaged by the illegal conduct of the Defendants, a monetary award in the amount of $15,295, as authorized by R C 1345 07(B) to the Attorney General as restitution for the consumers identified on Exhibit A, attached hereto and incorporated by reference  The payment shall be made by certified check or money order mailed or delivered to the Office of the Attorney General, Attn Linda Studer, Compliance Officer, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215, within 30 days of the time stamped date of this entry

5  As a means of ensuring compliance with this Court's Order, and with the consumer protection laws of Ohio, Defendants shall maintain in their possession and control, for a period of five (5) years, all business records relating to Defendants' business  Defendants shall permit the Ohio Attorney General or her designated representative, upon reasonable Forty-Eight (48) hour notice, to inspect and/or copy any and all records

6  Defendants shall not represent, directly, or indirectly, that the Ohio Attorney General has

sanctioned, condoned, or approved any part or aspect of the Defendants' business operation

7   Within thirty days of the signing of this order, the Defendants shall pay a civil penalty of $150,000   The payment shall be made by certified check or money order mailed or delivered to the Office of the Attorney General, Attn  Linda Studer, Compliance Officer, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215

8   Defendants shall pay all court costs

9   Each Defendant is jointly and severally liable for all remunerative provisions ordered in connection with this action.

SO ORDERED

_9/29/08_

DATE

_Julie M Lynch_

JUDGE LYNCH

Copies to

Terry L  Williams, AAG, 30 E  Broad St , Columbus, OH 43215
Indoor Environmental Air Consulting L L C , c/o Amanda Tobin 398 W  Columbus St ,
        Pickerington, Ohio 43147
Toby Tobin, 398 W  Columbus St , Pickerington, Ohio 43147

10

## IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO *EX REL.*<br>ATTORNEY GENERAL JIM PETRO,<br><br>       PLAINTIFF,<br><br>    v.<br><br>CRAFTMATIC ORGANIZATION, INC.<br><br>    And<br><br>J. KAZ, INC. d/b/a<br>CRAFTMATIC OF PITTSBURGH,<br><br>       DEFENDANTS. | CASE NO. 05-CVH-06-06060<br><br>JUDGE LYNCH<br><br><br>AGREED FINAL JUDGMENT<br>ENTRY AND ORDER<br><br>**RECEIVED**<br>ATTORNEY GENERAL OF OHIO<br><br>JUL 2 5 2005<br><br>CONSUMER PROTECTION SECTION<br>PUBLIC INSPECTION FILE |

This matter came to be heard upon the filing of a Complaint by the Attorney General of Ohio, Jim Petro, charging the Defendants with violations of Ohio's Consumer Sales Practices Act and Substantive Rules, Ohio Revised Code 1345.01 et seq. and Ohio's Home Solicitation Sales Act, 1345.21 et seq. The Attorney General has reached agreement with Defendants Craftmatic Organization, Inc. (Craftmatic) and J. Kaz, Inc. d/b/a Craftmatic of Pittsburgh (J. Kaz) and this Agreed Final Judgment Entry and Order ("Agreed Order") is intended to resolve the claims against the Defendants in this case. By signing this Agreed Order the Defendants submit to the personal jurisdiction of this Court, and consent to the Entry of this Judgment pursuant to R. C. 1345.07(F).

## AGREED FINDINGS OF FACT

1. Defendant Craftmatic Organization, Inc. (Craftmatic) is a foreign corporation with its principal place of business at 2500 Interplex Drive, Trevose, Pennsylvania, 19053. Craftmatic causes Craftmatic Adjustable Beds to be manufactured, creates advertisements for its distributors, and sells those beds to its distributors, including J. Kaz. Craftmatic does not sell beds directly to Ohio consumers nor does it extend credit or arrange financing for any purchasing Ohio consumer.

2. Defendant, J. Kaz, Inc. d/b/a Craftmatic of Pittsburgh (J. Kaz) is a foreign corporation with its principal place of business at 4230 Verona Road, Verona, Pennsylvania, 15147. J. Kaz is currently the exclusive authorized Craftmatic distributor in Ohio, and it advertises and sells Craftmatic Adjustable Beds to individuals in various Ohio counties, including Franklin County.

3. Craftmatic creates advertising and other lead generation programs, including sweepstakes, for the purpose, among others, of securing personal contact information about individual consumers, which information is then forwarded to distributors, including J. Kaz, for the purpose of attempting to arrange an in-home sales presentation.

4. Craftmatic creates and distributes print, audio and video advertising to and for its distributors, including J. Kaz, to use in connection with the solicitation and sale of Craftmatic beds.

5. J. Kaz trains salespersons through a training program which is in part based on a written training program.

6.  Craftmatic, during a portion of the time period relevant to this case, operated a "Special Counsel for Consumer Affairs" hotline to address problems that consumers have with distributors; said hotline number appears on the back of some J. Kaz purchase contracts.

7.  J. Kaz's sales leads are obtained, in whole or in part, through the advertising created by Craftmatic.

8.  J. Kaz contacts the sales lead, makes a sales appointment, and notifies the salesperson of such appointment, whereupon the salesperson arrives at the consumer's home and makes an in-home sales presentation to the consumer.

9.  Craftmatic's sweepstakes entry form does not state that the request for a telephone number thereon is in part for the purpose of J. Kaz contacting the participant to attempt to arrange an in-home sales presentation of Craftmatic beds.

10. Some advertisements in Ohio represent that consumers can obtain a Craftmatic Model II Adjustable Bed at a price comparable to, or less than, prices charged for "quality flatbeds."

11. Craftmatic advertisements in Ohio offer for sale four different beds, the Monaco, Model I, Model II and Model III.

12. Approximately 85% of the actual Craftmatic bed sales in Ohio are of the Model I bed with less than 1% of actual sales consisting of the advertised Monaco or Model III beds.

13. Craftmatic's and J. Kaz's "sweepstakes" advertised prize is a Craftmatic Model III bed with an estimated minimum retail value of $437.

14. J. Kaz's salespersons utilized a retail price in excess of $437 for the Craftmatic III twin bed in Ohio.

3

15. During the in-home sales presentations, the J. Kaz salespersons often advise the consumer that the Craftmatic III bed is intended for temporary use only and is of a lower quality than the other beds offered by J. Kaz.

16. J. Kaz's in-home sales presentations often last several hours and in some instances extended well into the late evening hours.

17. During the in-home sales presentations, J. Kaz instructs its salespersons to perform a number of sales steps, including: bringing a small "gift" to the consumer; obtaining detailed information about the consumer's medical condition and medical problems; showing the consumer a Craftmatic video; often engaging in price "negotiations" then executing a series of documents related to the purchase, including a contract, supplemental warranties, mattress replacement "guarantees," an "Information and Benefits" form, and in some cases completing credit applications.

18. Since the J. Kaz sales presentations occur in the home of the consumers, the consumers, prior to the delivery of their purchased bed, are unable to feel, touch, sample, sit on, lie on, or in any way tangibly assess the sales representations made about the quality, characteristics, uses, comfort, or benefits of the Craftmatic bed prior to the purchase of the bed and in most instances prior to the expiration of the consumers' three-day right to cancel.

19. During the in-home sales presentations, the J. Kaz salespersons make oral, visual, and written representations regarding the quality, comfort, characteristics, uses, and benefits of the Craftmatic bed.

20. Once the consumer contracts to purchase the adjustable bed from J. Kaz, delivery and assembly of the bed usually occurs in one to three weeks, but in almost every

4

transaction, delivery and assembly occurs after the consumer's cancellation right has expired.

21. In connection with the price "negotiation" for the Craftmatic Model I bed, the J. Kaz salesperson, by design, offers the consumer a "first day benefit" of $250, a "benefit" that every prospective purchaser is offered for a Craftmatic Model I bed.

22. In connection with the price "negotiation" for the Craftmatic Model I bed, that bed is offered in combination with a television, VCR or microwave oven for a combined price, and the J. Kaz salesperson, by design, offers the consumer a $250 price reduction if the consumer chooses to forego the appliance that is offered to the consumer as a "combination" offer.

23. In the event that the price "negotiation" between the J. Kaz salesperson and the consumer fails to result in a purchase agreement, J. Kaz often offers additional "reductions" from the initial price via telephone by its "executive sales team."

24. J. Kaz utilizes a sales contract whereby "TERMS AND CONDITIONS OF SALE" are listed on the reverse side of the contract, which is a legal size document in eight point type size, and there is no smaller type font found on the sales contract. The "TERMS AND CONDITIONS OF SALE" include terms such as "CANCELLATION" rights, "REFUND POLICY," and "RETURN POLICY," the accelerated payment terms upon default and the terms for use of promotional certificates.

25. J. Kaz's sales contract limits the implied warranty of merchantability and fitness for a particular purpose for the Craftmatic beds to the terms of the express warranty set forth in the sales contract.

26. J. Kaz's express warranty appears on the back of the sales contract and provides that, except for unusual repairs, all repairs and replacements will be made at the place of delivery (the consumer's home) and that after the one-year warranty expiration, repairs and/or replacements will be made at the then prevailing parts and labor charges.

27. J. Kaz's sales contract includes a provision that requires the consumer to pay "reasonable collection charges and all reasonable attorney's fees whether or not suit is commenced to enforce collection."

28. In many cases, J. Kaz assists in arranging financing for consumer purchasers.

29. In isolated cases, J. Kaz delivered and assembled the Craftmatic bed prior to the expiration of the consumer's three-day cancellation right with the consumer required to sign a Delivery Receipt that, inter alia, stated that all sales were final and that the consumer was 100% satisfied with the bed.

30. J. Kaz provided consumers with a form entitled "IMPORTANT Warranty Registration" which states "Please complete the shaded areas and give this form to the delivery personnel to register your warranty." The shaded area of the form requests the name, address and telephone numbers of three of the consumers' friends or family members for entry into the Craftmatic sweepstakes. The form also states "there's no obligation, you're just entering them in the sweepstakes." The form does not disclose that one of the purposes of the form is to obtain the names and telephone numbers of other consumers that J. Kaz intends to call in an attempt to set up in-home sales presentations.

6

## THE ATTORNEY GENERAL'S ADDITIONAL FACTUAL ASSERTIONS

In addition to the facts contained in the Agreed Findings of Fact, the Attorney General makes the following assertions of fact, based on his investigation, which Craftmatic and J. Kaz specifically dispute, to the extent applicable to each of them:

33.  J. Kaz utilizes videos, product information bulletins, and related sales documents executed at the time of the sale, some of which were created, in whole or in part, by Craftmatic.

34.  During the initial telephone contact by J. Kaz, consumers are not clearly, affirmatively and expressly informed that the purpose of the contact is to effect a sale of Craftmatic beds.

35.  Craftmatic's "sweepstakes" advertisements often picture a different bed than the bed that is the "sweepstakes" award.

36.  J. Kaz uses a salesperson compensation plan which is designed to penalize or prevent the salesperson from selling the advertised beds.

37.  In addition to those sales steps performed by the J. Kaz salesperson during the in-home sales presentation, as set forth in paragraph 17 of the Agreed Findings of Fact, the Attorney General asserts the following additional facts: during the in-home sales presentation, the salesperson performs a number of specifically required sales steps in addition to those enumerated in paragraph 17 including, in the consumer's bedroom the salesperson claims to simulate the quality, comfort, uses and benefits of the Craftmatic bed by building a bed using soft pillows, blankets, and a hand held massager; represents that the Craftmatic bed will resolve the consumer's medical problems; and creates a sense of urgency about the necessity of committing to a purchase.

38. J. Kaz, in its sales presentations, quotes an initial price for the adjustable bed, and then the salesperson grants an immediate reduction, representing that the consumer is receiving a discount.

39. Craftmatic and J. Kaz, in the course of advertising and soliciting sales to Ohio consumers, including during face to face solicitation visits in consumers' homes, have made representations either directly, indirectly, or by implication that:

    a.    the consumer can receive a special price, a discount or a price reduction from the "regular price" of the Craftmatic Adjustable Bed;

    b.    the discounts offered represent significant reductions in the price at which the beds normally sell;

    c.    the consumer can obtain a Craftmatic Adjustable Bed at a price comparable to prices charged for "quality flatbeds."

40. In some cases, J. Kaz salespersons have represented to consumers that using the Craftmatic bed will resolve the consumer's medical problems.

41. In some cases, J. Kaz salespersons have represented to consumers that the rental cost of a comparable adjustable hospital bed to be $300 to $400 a month.

42. In some cases, J. Kaz salespersons have discouraged consumers from utilizing Ohio's three-day right to cancel that is required in home solicitation sales.

43. In some cases, J. Kaz salespersons have failed to correctly complete the legally required Notice Of Cancellation form provided to purchasing consumers in connection with a home solicitation sale.

44. In some cases, J. Kaz failed to honor valid consumer cancellations.

8

45.  In some cases, the consumer's three-day right to cancel period required to be provided by J. Kaz commenced prior to financing terms being set.

46.  In some cases, J. Kaz salespersons failed to orally inform the buyer, at the time the home solicitation sale contract was signed, of the buyer's right to cancel.

47.  In some cases, consumers were not provided material lending terms and conditions by J. Kaz prior to executing the home solicitation sales contract.

48.  In some cases, the terms of the J. Kaz assisted financing were less favorable to the consumer than promised by J. Kaz.

49.  In some cases, consumers were not provided by J. Kaz with material lending terms as required by the federal Truth In Lending Act, 15 U.S.C.A. 1601 et seq. and 12 C.F.R. Part 226 (also known as Regulation Z).


## AGREED CONCLUSIONS OF LAW

50.  The Ohio Attorney General is the proper party to commence these proceedings under the authority provided him under R.C. 1345.07 and by virtue of his statutory and common law authority to protect the interests of the citizens of the State of Ohio.

51.  Jurisdiction over the subject matter of this action lies with this Court pursuant to R.C. 1345.04 of the Ohio Consumer Sales Practices Act.

52.  This Court has venue to hear this case pursuant to Ohio Civ. R. 3(B)(1)-(3), in that some of the transactions complained of herein, and out of which this action arose, occurred in Franklin County, Ohio.

53.  J. Kaz is a "supplier" as that term is defined in R.C. 1345.01(C) because it, at all times relevant herein, engaged in the business of effecting "consumer transactions" by

soliciting and selling adjustable beds to "individuals" in Franklin County and other counties in Ohio for purposes that were primarily personal, family or household within the meaning specified in R.C. 1345.01(A) and (D).

54. J. Kaz was, at all relevant times hereto, a "seller" engaged in the business of effecting home solicitation sales by soliciting and selling adjustable beds to "buyers" at the buyers' personal residences in Franklin County, and other counties in Ohio, for purposes that were primarily personal, family or household within the meaning specified in R.C. 1345.21(A) and (E).

55. Craftmatic is a "supplier" as that term is defined in R.C. 1345.01(C) because it, at all times relevant herein, engaged in the business of effecting "consumer transactions" by advertising adjustable beds to "consumers," and conducting a "sweepstakes" with an award by chance in Franklin County and other counties in Ohio for purposes that are primarily personal, family or household within the meaning specified in R.C. 1345.01(A) and (D).

## CONCLUSIONS OF LAW ASSERTED BY THE ATTORNEY GENERAL AND ADOPTED BY THE COURT

56. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02(B)(8) by representing to consumers that a specific price advantage exists, when such in fact is not true. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

57. A supplier commits unfair and deceptive acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02(A) and the Ohio Adm. Code 109:4-3-12(E) if their out-of-store advertising used such terms as "... *regularly* ___ *now* ___ ..." when the comparison was not to the supplier's true regular price, or when no fixed pricing existed at the time the consumer transactions were effected.

58. A supplier commits unfair and deceptive acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02(A) and the Ohio Adm. Code 109:4-3-12(G) if their out-of-store advertising made a comparison between the prices of similar, but non-identical goods and the non-identical goods are not of essentially similar quality to the advertised goods unless the dissimilar aspects are clearly and conspicuously disclosed in the advertisements.

59. A supplier commits unfair and deceptive acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02(A) and the Ohio Adm. Code 109:4-3-12(I) if its out-of-store advertising uses such terms as "sale," "discount," "bargain," or any other terms indicating a savings or reduction in price unless: (1) the savings or reduction is a meaningful reduction; or (2) the actual amount of percentage of savings is clearly and conspicuously indicated in the advertisement.

60. A supplier commits unfair and deceptive acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02(A) and OAC 109:4-3-10(A) if it makes representations, claims, or assertions of fact, orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless the supplier, at the time such representations, claims or assertions are made, possessed or relied on a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other

competent and reliable evidence which substantiates such representations, claims, or assertions of fact.

61. A supplier commits unfair, deceptive and unconscionable acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02 and 1345.03 if it makes false and misleading statements to consumers during sales presentations. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

62. A supplier commits unfair, deceptive and unconscionable acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02(A), 1345.03(B)(1) if it subjects consumers to high pressure sales tactics by creating a false sense of urgency.

63. A supplier commits unfair and deceptive acts and practices in violation of 1345.02, 1345.23(A), 1345.23(B)(3), 1345.23(D)(2)-(4), and Ohio Adm. Code 109:4-3-11(A)(5) if it fails to provide a written agreement with the required Notice of Cancellation, fails to notify consumers of their cancellation rights, fails to accurately complete the cancellation notice prior to providing it to the consumer, misrepresents the consumer's right to cancel, or fails to honor valid notices of cancellation.

64. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02(A) and 1345.02(B)(10), if it fails to honor express warranties made, and if it makes specific express representations as to the quality and uses of its goods, then disclaims those representations in its sales and warranty documents. Such acts and practices have been previously determined by Ohio courts to violate the Consumer

12

Sales Practices Act, R.C. 1345.01 et seq. and such decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

65. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02 and Ohio Adm. Code 109:4-3-11(A)(1) if it engages in direct solicitation sales without clearly, affirmatively, and expressly revealing at the time it initially contacts the consumer, before making any statement, asking any question, or entering the residence of the consumer, that the purpose of the contact is to effect a sale, stating in general terms the goods or services the supplier has to offer unless the consumer was solicited by mail.

66. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02 and Ohio Adm. Code 109:4-3-11(A)(3) if it engages in direct solicitation sales and during the sales presentation represents that the consumer has been specially selected to receive a bargain, discount, or other advantage when such in fact is not true.

67. A supplier commits unfair and deceptive acts and practices in violation of 1345.02 and Ohio Admin. Code 109:4-3-03(B) if it makes an offer of sale of any goods or services when such offer is not a bona fide effort to sell such goods or services.

68. A supplier commits unfair and deceptive and unconscionable acts or practices in violation of R.C. 1345.02 and 1345.03(B)(1) if it knowingly takes advantage of the inability of the consumer to reasonably protect his or her interests because of his or her physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such

decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

69. A supplier commits unfair and deceptive and unconscionable acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02 and 1345.03(B)(3) if it knows at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the transaction. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

70. A supplier commits unfair and deceptive and unconscionable acts or practices in violation of the Consumer Sales Practices Act, R.C. 1345.02 and 1345.03(B)(6) if it knowingly makes misleading statements of opinion upon which the consumers relied to their detriment. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

71. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02 and 1345.23 if it fails to disclose the material terms and conditions of any financing agreements, and if it fails to incorporate directly or by reference into the purchase contract such material terms and conditions, prior to the commencement of the three-day right to cancel. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such

14

decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

72. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02 and Ohio Adm. Code 109:4-3-02(A)(1) if it makes any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer all material exclusions, reservations, limitations, modifications or conditions.

73. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02 if it utilizes sales contracts containing provisions that require the consumer to pay attorney's fees occasioned by a breach of contract. Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. 1345.01 et seq. and such decisions are and have been available for public inspection pursuant to R.C. 1345.05(A)(3).

74. A supplier commits unfair and deceptive acts and practices in violation of R.C. 1345.02 and Ohio Adm. Code 109:4-3-04 if it offers a "gift" to the consumer in connection with the consumer purchasing a product if in reality the sales price is for the combination of goods and it is a fiction that any portion of the offer is a "gift."

## NON-ADMISSION

75. Neither Craftmatic nor J. Kaz admits that it engaged in any wrongdoing and the Court makes no finding that either company has operated in violation of the Consumer Sales Practices Act, R.C. 1345.01, et seq. or the Home Solicitation Sales Act, R.C. 1345.21,

15

et seq. Craftmatic and J. Kaz enter into this Agreed Final Judgment Entry and Order with the Attorney General to resolve the matters pertaining to them before this Court.

## ORDER

THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED that:

1.  It is hereby DECLARED that the acts set forth above in the Conclusions of Law Asserted by the Ohio Attorney General and Adopted by the Court violate the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. and/or Ohio's Home Solicitation Sales Act, R.C. 1345.21 et seq.

2.  Defendants Craftmatic and J. Kaz, and on behalf of their officers, partners, agents, servants, salespersons, employees, independent contractors, successors or assigns, and all persons acting in concert and participation with them, directly or indirectly, through any corporate device, partnership or association, in connection with any consumer transaction in Ohio, are hereby PERMANENTLY ENJOINED from engaging in acts and practices that violate the Consumer Sales Practices Act, R.C. 1345.01 et seq., including but not limited to those acts and practices described in this Order's Conclusions of Law to the extent applicable to each of them.

3.  Defendant J. Kaz, and on behalf of its officers, partners, agents, servants, salespersons, employees, independent contractors, successors or assigns, and all persons acting in concert and participation with them, directly or indirectly, through any corporate device, partnership or association, in connection with any consumer transaction in Ohio, is hereby PERMANENTLY ENJOINED from engaging in acts and practices that violate Ohio's Home Solicitation Sales Act, R.C 1345.21 et seq., and/or the federal Truth in

16

Lending Act, 15 U.S.C.A. 1601 et seq. including 12 C.F.R. Part 226 (Regulation Z), including but not limited to those acts and practices described in this Order's Conclusions of Law related thereto.

4.  Craftmatic and J. Kaz further agree, and it is Ordered, Adjudged, and Decreed, that they shall comply with all of the following with respect to the advertisement, solicitation and sale of Craftmatic beds in Ohio to the extent applicable to each of them:

    a.  Craftmatic and J. Kaz shall comply with O.A.C. 109:4-3-06. The sweepstakes entry may contain a space for the consumer's telephone number as long as the rules on the entry contain a statement that the entrant may be contacted by Craftmatic to see if the entrant is interested in learning more about Craftmatic Adjustable Beds. Craftmatic shall not manufacture or cause to have manufactured, and shall not distribute, a sweepstakes entry form that does not comply with this provision.

    b.  Craftmatic and J. Kaz will not make any price comparisons between flat beds and the Craftmatic Model I bed. Craftmatic and J. Kaz will not make any price comparisons between any Craftmatic bed and flat beds that use the words discount, sale, special value, dollar savings or percentage differential or any other language that references a price savings.

    c.  Craftmatic and J. Kaz will not make any price comparison by the use of such terms as "regularly ..., now ...," "...per cent off," "reduced from ... to ...," "save $...," unless the comparison is to the supplier's regular price. Craftmatic and J. Kaz will not make any price comparisons to the price of the Model I or any model that is offered at a negotiated price.

    d.  Craftmatic and J. Kaz shall not represent to consumers that the Craftmatic Adjustable Bed provides any specific therapeutic benefit or that it will cure or resolve any consumer's medical problem, except that this Agreed Order does not bar those representations that have been the express subject of a concurrence letter issued by the United States Food and Drug Administration ("FDA") provided that such representations are made in a non-deceptive manner and further provided that any qualifying or limiting language required or suggested by the FDA is incorporated as a part of such representations in each advertisement in which they are made.

    e.  J. Kaz shall not make any price comparison of the Craftmatic Adjustable Bed to a hospital bed and shall not represent that the Craftmatic Adjustable Bed is a hospital bed.

17

f.  Prior to the execution of the contract, J. Kaz will clearly and conspicuously offer a mattress exchange program that allows the consumer to request a one-time exchange of their mattress at no cost and no delivery charge to the consumer after 30 days but no later than 60 days after the consumer receives the mattress. If the consumer requests, J. Kaz will promptly exchange the consumer's mattress. Prior to the execution of the contract, J. Kaz will also clearly and conspicuously disclose in writing that the consumer cannot return the sleep system after the expiration of the cooling off period if the consumer finds it unacceptable, that the mattress exchange program is the consumer's sole remedy after the cooling off period if the consumer finds the sleep system unacceptable, and that the express warranties do not include a warranty as to the consumer's perceived comfort of the sleep system.

g.  Craftmatic and J. Kaz will not use the word "free" or "gift" or any similar term in connection with an item that is offered at a price other than its genuine "regular price."

h.  J. Kaz shall not use the Warranty Registration or any other form or practice that requires the consumer to provide names of friends or family members to J. Kaz or any other person or entity.

i.  Craftmatic and J. Kaz, in advertising, will not engage in price comparisons using any Craftmatic model bed or type that does not constitute more than 5% of J. Kaz actual sales in the preceding calendar year.

j.  J. Kaz shall clearly and conspicuously disclose in writing the price and availability for purchase of the Craftmatic Models II, III, the Monaco or any other model J. Kaz offers at a fixed price to every consumer during the in-home demonstration. J. Kaz will clearly and conspicuously disclose that the price of the Model I, or any model J. Kaz may offer at a negotiable price, is a negotiable price; and during the negotiation process therefor, J. Kaz will not use language such as discount, sale, special value, dollar amount or percentage off, or words of similar meaning. J. Kaz does not violate this provision if it states during the price negotiation that it is reducing its price offer. J. Kaz will create internal compliance procedures to ensure that those persons identified in Paragraph 3 of this Order comply with this provision.

k.  J. Kaz shall not use the "Price Release Waiver" or any similar form or representation regarding the future availability of the Craftmatic bed at a specific price.

l.  J. Kaz shall cease using any form that the consumer signs in connection with the transaction that contains any representation that the consumer is satisfied with the Craftmatic bed until the consumer has had a reasonable opportunity of not less than 30 days to use the bed.

18

m.   J. Kaz shall cease making any representation as to the number of satisfied bed purchasers unless and until Craftmatic and/or J. Kaz have conducted scientifically valid and significant survey research that substantiates any such statement. It shall not be a violation of this provision if Craftmatic and/or J. Kaz make a representation as to the number of beds sold and delivered during any specific time period providing said representation is true and can be substantiated.

n.   J. Kaz shall not use a sales plan or method of compensation of sales personnel which is designed to penalize or prevent a salesperson from selling the advertised goods.

o.   J. Kaz shall not complete online financing applications unless it has a consumer's prior written approval.

p.   J. Kaz will present to the consumer and have executed all sales-related financing documents in a face-to-face meeting between the consumer and a J. Kaz agent or representative.

q.   J. Kaz shall not state orally or in writing to the purchasing consumer that "All Sales Are Final."

r.   J. Kaz shall not request or permit a consumer to sign blank or partially completed credit applications or credit card receipts.

s.   J. Kaz shall not use the words "Special Counsel" or any similar term in reference to customer service contacts provided to the consumer.

t.   When the consumer expresses interest in financing their purchase through lenders made available by J. Kaz, then J. Kaz shall provide the consumer with a choice, if available, of financing companies and the following:

   i.    The identity of potential lenders and whether the financing would be open-ended (revolving credit) or close-ended (retail installment credit) and their respective Annual Percentage Rate.

   ii.   All disclosures required by the Federal Truth in Lending Act, 15 U.S.C.A. §1601 *et seq*. including 12 C.F.R. Part 226 (Regulation Z).

   iii.  A copy of the credit application, signed by the consumer, that is used to apply for the financing.

   iv.   Disclosure that financing obtained through J. Kaz is pursuant to agreements between those lenders and J. Kaz and that, based on the consumer's credit rating, the terms may or may not be the best available to the consumer.

u.   J. Kaz will not conduct a bedroom demonstration unless it clearly and conspicuously discloses that the presentation's purpose is to demonstrate the

19

Craftmatic bed positioning and that the pillows used during the demonstration do not actually represent the feel of the Craftmatic Adjustable Bed mattress. J. Kaz will not use language to state or imply that it provides a warranty, guarantee or words of similar meaning, as to the consumer's comfort.

v.   Craftmatic and J. Kaz, in advertising, will comply with the "FTC Guide Concerning Use of Endorsements and Testimonials in Advertising" as it relates to endorsements and testimonials.

w.   Craftmatic and J. Kaz will not advertise any item for which there is no genuine attempt to sell such item. J. Kaz will not offer any item for which there is no genuine attempt to sell such item.

x.   J. Kaz will clearly and conspicuously place on the front page of the purchase contract its return policy. In addition, the following statement in 14-point bold red type shall appear on the front page of the purchase contract: See Reverse Side for Complete Terms and Conditions of Sale. The Terms and Conditions of Sale shall be printed in no less than 12-point type.

y.   J. Kaz shall, as part of its sales representative training program, instruct present and future sales representatives that they are not to disparage any Craftmatic Adjustable Bed in any respect. It may, however, refer to the Craftmatic Model III Adjustable Bed as the "economy model" or "suitable for short term or temporary use."

z.   In connection with any advertisements or promotional materials prepared by Craftmatic, it shall not be a violation of this Agreed Order if such material clearly and conspicuously states "Not Valid In Ohio."

5.   Craftmatic and J. Kaz are provided a ninety (90) day period from the filing of this Agreed Order signed by the parties and the Court to come into compliance with the provisions of paragraphs 4a-z and a one hundred eighty (180) day period to come into compliance with any provision that involves Craftmatic's television advertisements or its sweepstakes. J. Kaz shall produce and utilize a new purchase contract that is compliant with this Agreed Order and a new mattress exchange policy described in subparagraph 4.f. within a sixty (60) day period. It shall not be a violation of this provision if a third party distributes a sweepstakes entry form that violates this Agreed Order. Within fifteen (15) days of the filing of this Agreed Order, J. Kaz shall

communicate to its salespersons the fact that the Agreed Order has been filed and specifically that it includes the provisions of subparagraphs 4.c., d., e., h., k., o., q and u. This undertaking by J. Kaz will have no impact on the implementation periods described in this paragraph.

6.    J. Kaz shall pay $200,000.00 pursuant to R.C. 1345.07(B) to the Attorney General for reimbursement to the consumers identified on Addendum A, attached hereto and incorporated by reference, payment to be as follows:  $50,000.00 within fifteen (15) days of the entry of this Agreed Order and the balance of $150,000 within thirty (30) days of the entry of this Agreed Order.  The payment shall be made by wire transfer to the Office of the Attorney General, Consumer Protection Section, in accordance with the wire transfer instructions provided by the Attorney General.  Restitution distribution shall be at the sole discretion of the Attorney General, but participation in the distribution shall be limited to those eligible individuals identified on Addendum A hereto.  The Attorney General agrees to obtain a signed release of liability in the form attached hereto as "Addendum B," from every consumer who participates in this restitution distribution.  The Attorney General shall deliver to Craftmatic's or J. Kaz's attorneys the original signed and notarized releases within fifteen (15) days of their receipt by the Attorney General.

7.    Within thirty (30) days of the entry of this Agreed Order, Craftmatic shall pay a civil penalty of $20,000.00 and J. Kaz will pay a civil penalty of $80,000.00, each pursuant to R.C. 1345.07(D).  On or before the first anniversary of the entry of this Agreed Order, Craftmatic will pay an additional civil penalty of $5,000.00 and J. Kaz will pay an additional civil penalty of $20,000.00, each pursuant to R. C. 1345.07(D).  On or

21

before the second anniversary of the entry of this Agreed Order, Craftmatic will pay an additional civil penalty of $5,000.00 and J. Kaz will pay an additional civil penalty of $20,000.00, each pursuant to R. C. 1345.07(D). On or before the third anniversary of the entry of this Agreed Order, Craftmatic will pay an additional civil penalty of $5,000.00 and J. Kaz will pay an additional civil penalty of $20,000.00, each pursuant to R. C. 1345.07(D). The payments shall be made by wire transfer to the Office of the Attorney General, Consumer Protection Section, in accordance with the wire transfer instructions provided by the Attorney General.

8.    J. Kaz shall mediate in good faith any consumer complaint received by the Attorney General subsequent to the execution and filing of this Agreed Order.

9.    As a means of ensuring compliance with this Court's Order, and with the consumer protection laws of Ohio, Craftmatic shall maintain in their possession and control, for a period of three (3) years, all business records relating to Craftmatic's advertising of and sweepstakes related to Craftmatic Adjustable Beds in Ohio. Craftmatic shall permit the Ohio Attorney General or his designated representative, upon five (5) business days notice, to inspect and/or copy any and all records during normal business hours. J. Kaz shall maintain in their possession and control, for a period of three (3) years, all business records relating to J. Kaz's solicitation and sale of Craftmatic Adjustable Beds in Ohio. J. Kaz shall permit the Ohio Attorney General or his designated representative, upon five (5) business days notice, to inspect and/or copy any and all records during normal business hours.

10.   Within thirty (30) days of the entry of this Agreed Order, Craftmatic shall pay the Ohio Attorney General $15,000.00 and J. Kaz will pay $35,000.00 for attorney fees and

22

investigative costs. The payments shall be made by wire transfer to the Office of the Attorney General, Consumer Protection Section, in accordance with the wire transfer instructions provided by the Attorney General.

11. Defendants shall pay all court costs in this case. It is further agreed by the parties that upon the execution and filing of this Agreed Order they will execute and file a Stipulation of Dismissal, pursuant to Civ. R. 41(A)(1)(b), in the related case captioned *State of Ohio v. Craftmatic Organization Inc. and J. Kaz, Inc. d/b/a Craftmatic of Pittsburgh*, Case No. 03-CVH-12-14158. Said Stipulation of Dismissal shall be with prejudice, each side to bear its own attorney fees and costs, with court costs to be paid by Craftmatic and J. Kaz. The form of the Stipulation is attached hereto as Addendum "C."

12. The Attorney General shall, absent exigent circumstances, give Craftmatic and/or J. Kaz fourteen (14) calendar days notice before filing a motion or other pleading seeking contempt of court or other sanctions for violation of this Agreed Order. The notice shall be in writing and set forth those provisions in the Agreed Order that the Attorney General believes have been violated. The fourteen (14) calendar days notice period shall provide an opportunity for Craftmatic and/or J. Kaz to respond to the assertions of the Attorney General and the parties may use the notice period to attempt a resolution of the concerns. Upon receipt of the written notice, Craftmatic and/or J. Kaz shall respond in writing within seven calendar days and may request a meeting with the Attorney General (or a staff person designated by the Attorney General) for the purpose of attempting to resolve the concerns set forth in the Attorney General's notice. The Attorney General shall not unreasonably deny the request for such a meeting. This

provision does not preclude the Attorney General from filing a motion or other pleading seeking contempt of court or other sanctions without complying with this provision if the Attorney General believes such immediate action is necessary.

13. The Attorney General may notify or serve J. Kaz as provided under this Agreed Order or in any subsequent action at the following address and telephone number:

> J. Kaz, Inc. d/b/a Craftmatic of Pittsburgh
> Attention: John Girty
> 4230 Verona Road
> Verona, Pennsylvania 15147
> (412) 242-2200

The Attorney General may notify or serve Craftmatic as provided under this Agreed Order or in any subsequent action at the following address and telephone number:

> Craftmatic Organization Inc.
> Attention: Stanley Kraftsow
> 2500 Interflex Drive
> Trevose, Pennsylvania 19053
> (215) 639-1310

Craftmatic and/or J. Kaz, if necessary, may notify the Attorney General under this Agreed Order at the following address and telephone number:

> Mr. Robert Hart
> Assistant Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 466-1305

If Mr. Hart is unavailable, notification to the Attorney General at the following address and telephone number:

> Senior Deputy Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

14. Failure of the Attorney General to timely enforce any term, condition, or requirement of this Agreed Order shall not provide, nor be construed to provide, Craftmatic or J. Kaz a defense for noncompliance with any term of this Agreed Order or any other law, rule, or regulation; nor shall it stop or limit the Attorney General from later enforcing any term of this Agreed Order or seeking any other remedy available by law, rule, or regulation.

15. J. Kaz shall inform those officers, agents, servants, salespersons, employees, independent contractors, successors or assigns involved in the sale of a Craftmatic Adjustable Bed to consumers in the State of Ohio of the content of this Agreed Order.

16. Craftmatic shall inform those officers, agents, servants, employees, independent contractors, successors or assigns involved in the development and/or placement of advertisements or contests in Ohio of the content of this Agreed Order.

17. Craftmatic and J. Kaz shall not represent directly or indirectly or in any way whatsoever that the Court or the Ohio Attorney General has sanctioned, condoned, or approved any part or aspect of their business operations.

18. This Agreed Order resolves and terminates any and all claims asserted in this case by the Attorney General, except that this Court retains jurisdiction of this case solely for the purpose of enforcing the terms and conditions of this Agreed Order, if necessary.

IT IS SO ORDERED.

Date: _____       _____

Judge Lynch

25

| | Last Name | First Name | | Last Name | First Name |
|---|---|---|---|---|---|
| 1 | Ackley | William and Pansy | 53 | Lindsey | Robert & Lula |
| 2 | Aleshire | Kathleen and Jimmy | 54 | Lindsey | Elsie |
| 3 | Ball | c/o Barbara (Roy and Bertie) | 55 | Little | Alda |
| 4 | Barnett | Norman | 56 | Loder | Ricky |
| 5 | Baumgarner | Margaret | 57 | Louden | Mary |
| 6 | Baxter | William and Mary | 58 | Love | Kenneth |
| 7 | Behnke | Catherine | 59 | Lucas | Albert & Barbara |
| 8 | Blosser | Helen | 60 | Manion | Virginia |
| 9 | Bollinger | Natalia & Art | 61 | Manning | Alice |
| 10 | Brown | Nellie | 62 | McNeeley | Margaret |
| 11 | Bryan | Hilda and William | 63 | Michael | Mary |
| 12 | Buffington | Nina | 64 | Miller | Jean |
| 13 | Chiappone | Eva | 65 | Monschein | Marilyn |
| 14 | Chillo | Antonio | 66 | Montgomery | Elizabeth |
| 15 | Clark | LaDonna & Robert | 67 | Morrison | Mary Lou |
| 16 | Condit | Milo and Doris | 68 | Mosher, Sr. | Thomas |
| 17 | Cumba-Rodriguez | Margarita and Alvaro | 69 | Myers | Marion |
| 18 | Cutright | Ida | 70 | Park | Thomas |
| 19 | Donahue | Richard | 71 | Parsons | Dormal |
| 20 | Estep | Joan | 72 | Peppard | Joyce |
| 21 | Fahrbach | Rosemary | 73 | Pitts | Charlie |
| 22 | Ferguson | Scott | 74 | Raies | Gregory |
| 23 | Ferguson | Charles and Phyllis | 75 | Rinehart | Vivian |
| 24 | Ford | Esther | 76 | Ringenbach | Ruby |
| 25 | Friedt | Blake & Wilma | 77 | Robinson | Larry and Sharon |
| 26 | Fullenkamp | James | 78 | Sarver | Lelia |
| 27 | Gennaro | Anthony | 79 | Schillinger | Patricia |
| 28 | Gibson | James & Juanita | 80 | Schneider | Ruth |
| 29 | Gilbert | Dorothy | 81 | Schwarz | Robert |
| 30 | Gillett | Jerry and Judy | 82 | Sheridan | Pat |
| 31 | Goldschmidt | Henry | 83 | Skully | Adeline |
| 32 | Griffith | Angela | 84 | Smith | Donald & Marion |
| 33 | Griggs | Rosalie | 85 | Smith | Rose |
| 34 | Grove | Raymond | 86 | Smith | Duane & Lucille |
| 35 | Gump, Jr. | Irvin | 87 | Smith | David and Helen |
| 36 | Gundel | Claire | 88 | Stewart | Ronald |
| 37 | Hattery | Lillian | 89 | Stover | Wilda (Geraldine) |
| 38 | Hemmelgarn | Kathryn | 90 | Stright | Daniel |
| 39 | Hobbs | Douglas | 91 | Sweatt | Lorali |
| 40 | Hodgman | Ethel & Glenn | 92 | Terry | Pearlie |
| 41 | Holder | Thora | 93 | Thomas | Richard and Regina |
| 42 | Holeton | Allen and Carol | 94 | Thompson | Janice |
| 43 | Horning | Oliver | 95 | Tilton (Campana) | Gae and Tom |
| 44 | Howell | Iris | 96 | Twyman | Earlene |
| 45 | Hughart | Roger and Juanita | 97 | White | Carl |
| 46 | James | Glenford and Hazel | 98 | Wildman | Sara |
| 47 | Jodrey | Ella | 99 | Wittway | Jenny |
| 48 | Kaplan | Barbara Jean | 100 | Woods | Mabel |
| 49 | King | Betty | 101 | Wright | Kathleen |
| 50 | Krenzel | John & Meredith | | | |
| 51 | Lampshire | Vera | | | |

| | Last Name | First Name | | Last Name | First Name |
|---|---|---|---|---|---|
| 52 | Lewis | Kathryn | | | |

Addendum B

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

_____ and _____ residing at _____ _____, Ohio, _____ (defined herein as "BUYER/RELEASOR"), in consideration of the sum of _____ Dollars ($_____) and other good and valuable consideration received from J. Kaz, Inc. d/b/a Craftmatic of Pittsburgh and Craftmatic Organization, Inc. (defined collectively herein as "RELEASEES"), receipt whereof is hereby acknowledged, hereby agree as follows:

BUYER/RELEASOR hereby release and discharge the RELEASEES, RELEASEES' officers, partners, agents, servants, salespersons, employees, independent contractors, successors or assigns, and all persons acting in concert and participation with them (collectively, the "RELEASED PARTIES"), from any and all actions, causes of action, suits, charges and obligations, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which BUYER/RELEASOR ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this RELEASE, against the RELEASED PARTIES or any of them, and more specifically arising out of the purchase of a Craftmatic Adjustable Bed.

Wherever the sense of this SETTLEMENT AGREEMENT AND GENERAL RELEASE requires, a singular number shall be construed to be plural and vice versa, and words of the masculine gender shall be construed to be feminine and vice versa.

This SETTLEMENT AGREEMENT AND GENERAL RELEASE may only be changed in writing signed by both BUYER/RELEASOR and RELEASEES.

IN WITNESS WHEREOF, the BUYER/RELEASOR has executed this SETTLEMENT AGREEMENT AND GENERAL RELEASE on the _____ day of _____, 2005.

WITNESS:

_____

_____
BUYER/RELEASOR

_____
BUYER/RELEASOR

STATE OF OHIO, COUNTY OF _____ ss.:

On _____, 2005 before me Notary Public personally came _____ and _____ to me known, and known to me to be the individual(s) described in, and who executed the foregoing Settlement Agreement and General Release, and duly acknowledged to me that (t)(s)he(y) executed the same.

_____
Notary Public

Addendum C

IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO *EX REL.* ATTORNEY GENERAL JIM PETRO, | ) ) ) | CASE NO. 03-CVH-12-14158 |
| | ) ) | JUDGE PFEIFFER |
| PLAINTIFF, | ) ) | |
| v. | ) ) | |
| CRAFTMATIC ORGANIZATION, INC. | ) ) | |
| And | ) ) | STIPULATION OF DISMISSAL WITH PREJUDICE |
| J. KAZ, INC. d/b/a CRAFTMATIC OF PITTSBURGH, | ) ) ) | |
| DEFENDANTS. | ) ) | |

Pursuant to Civil Rule 41(A)(1)(b) the State of Ohio ex rel Attorney General Jim Petro, Craftmatic Organization, Inc., and J. Kaz, Inc. d/b/a Craftmatic of Pittsburgh, hereby stipulate to the dismissal of this action with prejudice, each party to bear their own legal fees and costs, Craftmatic Organization Inc. and J. Kaz to pay all court costs.

APPROVED:                          APPROVED:

Robert M. Hart, AAG [0014854]      David F. Axelrod [0024023]
Erin Leahy, AAG [0069509]          Thomas B. Ridgley [0000910]
30 East Broad Street, 14th Floor   Vorys, Sater, Seymour and Pease LLP
Columbus, Ohio 43215-3428          52 East Gay Street
614, 466.1305                      Columbus, Ohio 43215
614 488.8898 [facsimile]           614.464.6400
Rhart@ag.state.oh.us               614.719.4612 [facsimile]
Eleahy@ag.state.oh.us              dfaxelrod@vssp.com
                                   tbridgley@vssp.com

                                   Charles B. Chernofsky, Esq.
                                   114 Main Street
                                   4499 Route 27
                                   Kingston, NJ 08528

                                   Counsel for J. Kaz Inc.


                                   Helen Mac Murray
                                   Kegler Brown Hill & Ritter
                                   Capitol Square, Suite 1800
                                   65 E. State Street
                                   Columbus, OH 43215-4294

                                   Charles Greenman
                                   Karen F. Lederer
                                   Troutman Sanders LLP
                                   The Chrysler Building
                                   405 Lexington Avenue
                                   New York, NY 10174

                                   Counsel for Craftmatic Organization, Inc.

Exhibit C

THRASHER, DINSMORE & DOLAN
A Legal Professional Association
100 7TH AVENUE, SUITE 150
CHARDON, OHIO 44024-1079
(440) 285-2242
FAX (440) 285-9423
www.tddlaw.com

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

WILLIAM J. HENRY           :         Case No. 12 CV 001097

         Plaintiff        :         JUDGE JOSEPH GIBSON

     vs.                  :

MICHAELS STORES, INC.    :        <u>LEAVE TO PLEAD</u>
                            :

         Defendant

We, the attorneys for the respective parties, do hereby stipulate that defendant

Michaels Stores, Inc. shall respond to plaintiff's complaint by July 3, 2012 and that the court

may enter an order accordingly, notice by the Clerk being hereby waived.

No previous extensions have been granted.

IT IS SO ORDERED.

_____
JUDGE JOSEPH GIBSON

                           Respectfully submitted,

                           _____
                           Brandon D.R.Dynes, Esq. (#0068246)
                           Email: BDynes@tddlaw.com
                           Todd C. Hicks, Esq. (#0063255)
                           Email: THicks@tddlaw.com
                           Ezio A. Listati, Esq. (#0046703)
                           Email: EListati@tddlaw.com
                           THRASHER, DINSMORE & DOLAN
                           100 7th Avenue, Suite 150
                           Chardon, Ohio 44024
                           Telephone: 440/285-2242

Approved:

Per phone consent 6-4-12 _(signature)_
Nicole T. Fiorelli, Esq.
Dworken & Bernstein Co.
Attorney for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

    A copy of the foregoing was sent via email on this the ___4th___ day of June, 2012 to the following:

        Nicole T. Fiorelli, Esq.
        Dworken & Bernstein
        60 South Park Place
        Painesville, Ohio 44077

        nfiorelli@dworkenlaw.com

        _(signature)_
        Todd C. Hicks

THRASHER, DINSMORE & DOLAN
A Legal Professional Association
100 7TH AVENUE, SUITE 150
CHARDON, OHIO 44024-1079
(440) 285-2242
FAX (440) 285-9423
www.tddlaw.com

-2-

FILED

2012 JUL 23 AM 9 17   IN THE COURT OF COMMON PLEAS

LAKE COUNTY, OHIO

MAUREEN G. KELLY
LAKE CO.

WILLIAM J. HENRY, COURT


RECEIVED
JUL 2 5 2012

| | |
|---|---|
| WILLIAM J. HENRY, | ) CASE NO. 12CV001097 |
| Plaintiff | ) |
| vs. | ) JUDGMENT ENTRY |
| MICHAELS STORES, INC. | ) |
| Defendant | ) |

Leave is hereby granted to Plaintiff to file his Brief in Opposition to Defendant's Motion to Dismiss by August 3, 2012.

IT IS SO ORDERED.

_Joseph Gibson_

JUDGE JOSEPH GIBSON

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

FILED

2012 AUG 1 AM 8 42

MAUREEN G. KELLY
LAKE CO.
CLERK OF COURT

| | | |
|---|---|---|
| WILLIAM J. HENRY | ) | CASE NO. 12CV001097 |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | JUDGMENT ENTRY |
| | ) | |
| MICHAELS STORES, INC. | ) | |
| | ) | |
| Defendant | ) | |

The within cause came on for consideration this day, to wit: July 31, 2012 upon Defendant's Motion to Stay Discovery filed July 17, 2012, Plaintiff's Brief in Opposition to Defendant's Motion to Stay Discovery filed July 19, 2012, and Defendant's Reply Brief in Support of Motion to Stay Discovery filed July 27, 2012.

Upon review, the Court finds Defendant's motion well taken as Defendant filed a Motion to Dismiss on July 3, 2012. "A trial court acts within its discretion when it grants a stay of discovery pending the resolution of a dispositive motion." *Thomson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-782, 2010-Ohio-416, ¶ 32. Since all responsive briefs to Defendant's Motion to Dismiss are due within the next fourteen (14) days, the Court concludes that any delay caused by the stay should be minimal.

WHEREFORE, it is the order of this Court that Defendant's Motion to Stay Discovery pending the Court's ruling on Defendant's Motion to Dismiss is hereby granted.

IT IS SO ORDERED.

_____
JOSEPH GIBSON, JUDGE

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.

FILED

2012 SEP 10  AM 8 37

MAUREEN G. KELLY
LAKE CO.

RECEIVED
SEP 12 2012

**IN THE COURT OF COMMON PLEAS**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| WILLIAM J. HENRY, | ) | CASE NO. 12CV01097 |
| Plaintiff | ) | |
| vs. | ) | JUDGE JOSEPH GIBSON |
| | ) | |
| MICHAELS STORES, INC., | ) | |
| Defendant | ) | <u>JUDGMENT ENTRY</u> |

Leave is hereby granted to <u>Plaintiff William J. Henry</u> to <u>file its Surreply Brief in Support of Opposition to Motion to Dismiss Instanter.</u>

_____
Joseph Gibson

<u>Nicole T. Fiorelli</u>
Attorney for Plaintiff

<u>Brandon D. R. Dynes</u>
Attorney for Defendant

RECEIVED

OCT 2 5 2012

FILED

2012 OCT 9 02

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

MAUREEN G.
LAKE CO.
CLERK OF COURT

WILLIAM J. HENRY,                    CASE NO. 12CV001097

        Plaintiff

vs.                                  JUDGMENT ENTRY

MICHAELS STORES, INC.,

        Defendant

      The within cause came on for consideration this day, to wit: October 22, 2012 upon the following:

    1.    Defendant's Motion to Dismiss filed July 3, 2012;

    2.    Plaintiff William J. Henry's Brief in Opposition to Defendant Michaels Stores' Motion to Dismiss filed August 3, 2012;

    3.    Defendant's Reply Brief in Support of Motion to Dismiss filed August 10, 2012; and

    4.    Plaintiff's Surreply Brief in Support of Opposition to Motion to Dismiss, filed September 10, 2012.

      This case arises from Plaintiff William J. Henry's ("Plaintiff") Complaint against Defendant Michaels Stores, Inc. ("Michaels") alleging breach of contract, unjust enrichment, fraud, and a violation of the Ohio Consumer Sales Practices Act. Michaels has now moved this Court for an order dismissing Plaintiff's Complaint pursuant to Civ.R. 12(B)(6).

      This matter arises from the following facts: Around September 21, 2011, Plaintiff went to the Michaels store in Mentor, Ohio to have a poster framed. Plaintiff decided to patronize Michaels in particular because Michaels advertised a 40% off sale on framing products and/or services. Plaintiff contracted with Michaels and paid to have his poster framed. Plaintiff alleges that he subsequently learned that this sale was ongoing, which

created a situation where the prices of framing products and/or services are never actually discounted but remain the same at all times. Plaintiff then filed the instant matter, claiming that he did not receive the advertised discount off of Michaels' regular prices.

In support of its Motion, Michaels contends that Plaintiff's Complaint should be dismissed because he fails to allege any actual damages or injury. In addition, with regard to Plaintiff's breach of contract claim, Michaels asserts that the terms of the contract do not include peripheral advertisements, and even if they did, Plaintiff does not allege that Michaels has breached any contractual term. Finally, Michaels contends that Plaintiff has failed to plead fraud with sufficient particularity.

In response, Plaintiff argues that the damages he has alleged are equivalent to the advertised discount that he did not receive. Plaintiff also contends that the advertisement was a part of the contract in this situation. Further, Plaintiff argues that he has pled fraud with sufficient particularity in that he has alleged the circumstances constituting the fraud, including the time, place and content.

In its Reply Brief, Michaels asserts that pursuant to R.C. 1345.09, a plaintiff seeking to bring a class action claim must show actual damages. Michaels argues that Plaintiff agreed to pay a particular price for a frame and framing services and he received the same. Moreover, Michaels notes that the cases cited by Plaintiff are consumer protection cases brought by the Ohio Attorney General and not private plaintiffs, who must show actual injury.

In his Surreply Brief, Plaintiff disputes Michaels' characterization of the cases cited in its brief as being of no value and argues that these cases were made available for public inspection under R.C. 1345.05(A)(3). In addition, Plaintiff asserts that the advertisement became part of the contract because it was clear, definite and left nothing open for negotiation.

Upon review, the Court finds Michaels' Motion to Dismiss well taken in part. In considering a Civ.R. 12(B)(6) motion to dismiss, all of the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). A Civ.R. 12(B)(6) motion to dismiss is a procedural device for testing the

2

sufficiency of the complaint and is confined to averments in the pleadings. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). Before a court can sustain a Civ.R. 12(B)(6) motion to dismiss, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

Furthermore, "a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. Nor should a complaint be dismissed that does not state with precision all the elements that give rise to a legal basis for recovery." (Citations omitted.) *Rogers v. Targot Telemarketing Services*, 70 Ohio App.3d 689, 692, 591 N.E.2d 1332 (10th Dist. 1990).

## Plaintiff's Breach of Contract Claim

In order to have an enforceable contract, there must exist a meeting of the minds of the parties to said contract. *Alligood v. Procter & Gamble Co.*, 72 Ohio App.3d 309, 311, 594 N.E.2d 668 (1st Dist. 1991), citing *Noroski v. Fallet*, 2 Ohio St.3d 7, 442 N.E.2d 1302 (1982). "A valid contract must also be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." *Alligood*. (Citations omitted).

The Court finds that the advertisement in question lacks the requirements to create a valid contract. Only one of the parties is identified. Further, by Plaintiff's own assertion, the price term is ambiguous. "A contract indefinite at the time of its making is not binding." *Alligood*, citing *Preston v. First Bank of Marietta*, 16 Ohio App.3d 4, 473 N.E.2d 1210 (4th Dist. 1983). Accordingly, the Court finds that the advertisement did not constitute a contract and as such, Plaintiff's breach of contract claim shall be dismissed.

## Plaintiff's Fraud Claim

"The elements of fraud are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether

3

it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 53, 2009-Ohio-2665, 915 N.E.2d 696 (10th Dist.), citing *Gaines v. Preterm-Cleveland, Inc.* 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987). (Citations omitted).

Civ.R. 9(B) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The 'particularity' requirement of Civ.R. 9(B) means that the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud." *Rieger v. Podeweltz*, 2nd Dist. No. 23520, 2010-Ohio-2509.

Michaels argues that Plaintiff's fraud claim should be dismissed because it is not pled with sufficient particularity. Plaintiff contends that he has alleged the time, place and content of the false representation and that the alleged fraudulent statement was material to the transaction. Further, Plaintiff asserts that he justifiably relied on Michaels' misrepresentations and paid an additional 40% or more for the frame he purchased.

The Court finds that Plaintiff's fraud claim has been pled with sufficient particularity. Michaels' Motion shall therefore be denied on these grounds.

**Plaintiff's remaining claims**

Michaels argues that Plaintiff has not alleged any damages or injury in his unjust enrichment claim, his fraud claim or his claim under the Ohio Consumer Sales Practices Act. Plaintiff contends that his damages are equivalent to the advertised discount of 40% that he did not receive. Specifically, Plaintiff contends that the $200.00 that he paid for the framing was the regular price and that he should have only paid 60% of this amount. As such, Plaintiff contends that he is entitled to damages of at least $80.00.

The Court finds that, taking all the factual allegations of the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, it does not appear beyond doubt that Plaintiff can prove no set of facts in support of his remaining claims which would entitle him to relief. Accordingly, Michaels' Motion to Dismiss is denied as to Plaintiff's unjust enrichment claim, fraud claim and his claims under the Ohio Consumer Sales Practices

4

Act.

WHEREFORE, it is the order of this Court that Michaels' Motion to Dismiss is hereby granted solely as to Plaintiff's Breach of Contract Claim. Michaels' Motion is denied as to Plaintiff's fraud claim, unjust enrichment claim and Plaintiff's claims under the Ohio Consumer Sales Practices Act.

Count 2 is hereby dismissed.

IT IS SO ORDERED.

_____
JOSEPH GIBSON, JUDGE

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.

WILLIAM J. HENRY,

        Plaintiff,

    vs.

MICHAELS STORES, INC.,

        Defendant.

CASE NO. 12-CV-001097

JUDGE JOSEPH GIBSON

**ANSWER OF DEFENDANT
MICHAELS STORES, INC.**

Now comes Defendant Michaels Stores, Inc. ("Michaels"), by and through its undersigned counsel, and answers the Complaint of Plaintiff William J. Henry ("Plaintiff") as follows:

1.      Michaels admits the allegations contained in Paragraph 2 of the Complaint.

2.      Michaels denies the allegations contained in Paragraphs 10, 11, 12, 14, 19, 20, 21, 22, 24, 25, 33, 34, 35, 36, 37, 38, 42, 44, 45, 46, 50, 52, 53, 54, 58, 59, and 61 of the Complaint.

3.      Michaels is without information sufficient to admit or deny the allegations contained in Paragraphs 1, 6, 7, 8, 9, 13, 23, 40, 41, 43, 48, 49, 51, 56, 57, and 60 of the Complaint.

4.      To the extent that the section of the Complaint titled "Introduction" contains factual allegations that require an answer, the allegations are admitted in part and denied in part. It is admitted that Michaels sells craft supplies and framing supplies and services to the general public, and that Michaels previously entered into a settlement with the New York Attorney General. It is denied that Michaels violated the law or engaged in any wrongdoing. The remainder of the allegations contained in those paragraphs are denied.

5.      Michaels admits in part the allegations contained in Paragraph 3 of the Complaint. It is admitted that Michaels transacts business in the State of Ohio and contracts to supply goods in the State of Ohio. The remainder of that paragraph contains legal conclusions to which no answer is required; to the extent those allegations require an answer, they are denied.

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

6.      Michaels admits in part the allegations contained in Paragraph 4 of the Complaint. It is admitted that Michaels conducts business in Lake County and that some of the alleged acts described in the Complaint allegedly occurred in Lake County. The remainder of that paragraph contains legal conclusions to which no answer is required; to the extent those allegations require an answer, they are denied.

7.      Michaels admits in part and denies in part the allegations contained in Paragraph 15 of the Complaint. It is admitted that Michaels entered into a settlement with the New York Attorney General regarding advertising practices and that Plaintiff has accurately quoted the New York Attorney General's press release. It is denied that Michaels violated the law or engaged in any wrongdoing. The remainder of the allegations contained in that paragraph are denied.

8.      Michaels admits in part and denies in part the allegations contained in Paragraph 17 of the Complaint. It is admitted that Plaintiff purports to bring this action on behalf of the defined putative class. The remainder of the allegations contained in that paragraph are denied.

9.      Michaels admits in part and denies in part the allegations contained in Paragraph 18 of the Complaint. It is admitted that over 40 Ohio residents have purchased framing products and/or services from Michaels within the last 15 years during a week where Michaels was advertising a discount for framing products and/or services. The remainder of the allegations contained in that paragraph are denied.

10.      Michaels denies in part the allegations contained in Paragraph 26 of the Complaint. It is denied that Plaintiff is entitled to any damages. Michaels is without information sufficient to admit or deny the remainder of the allegations contained in that paragraph.

11.      Michaels is without information sufficient to admit or deny the allegations contained in Paragraph 32 of the Complaint, because that paragraph fails to reference any particular advertisement.

12.      No answer is required to Paragraphs 27, 29, 30, and 31 of the Complaint, because they contain legal conclusions. To the extent that these paragraphs require an answer, the allegations contained therein are denied.

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

2

13. No answer is required to Paragraphs 5, 16, 28, 39, 47, and 55 of the Complaint, because they do not contain any factual allegations. To the extent that these paragraphs require an answer, the allegations contained therein are denied.

14. Except as otherwise expressly recognized above, Michaels denies each and every allegation contained in Paragraphs 1 through 61 of the Complaint, including, without limitation, the headings and subheadings contained in the Complaint, and specifically denies any liability to Plaintiff. Pursuant to Rule 8(d) of the Ohio Rules of Civil Procedure, averments in the Complaint to which no responsive pleading is required shall be deemed denied. Michaels expressly reserves the right to amend and/or supplement its Answer.

15. Michaels denies that Plaintiff is entitled to any relief from the Court.

## AFFIRMATIVE AND OTHER DEFENSES

The statement of any defense hereinafter does not assume the burden of proof for any issue as to which applicable law places the burden upon Plaintiff. Michaels expressly reserves the right to amend and/or supplement its defenses. Michaels asserts as follows:

1. The Complaint fails to state a claim upon which relief can be granted.

2. Michaels met the standard of care required by contract, law, or otherwise and is not liable to plaintiff.

3. The Complaint fails to plead fraud with particularity.

4. The claims are barred in whole or in part because Plaintiff did not suffer any damages.

5. The claims are barred in whole or in part by Plaintiff's failure to mitigate damages.

6. The claims are barred in whole or in part by Plaintiff's own actions and failures to act.

7. The claims are barred in whole or in part by actions or failures to act of third parties over whom Michaels had no control.

8. The claims are barred in whole or in part by the doctrines of setoff, offset, and recoupment.

9. The claims are barred in whole or in part by an independent intervening or superseding cause.

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

10. The claims are barred in whole or in part by Plaintiff's acquiescence and ratification.

11. The claims are barred in whole or in part by the applicable statute of limitations and/or by the doctrine of laches.

12. The claims are barred in whole or in part by the doctrine of unclean hands.

13. An award of attorney's fees and/or punitive damages is impermissible based upon the allegations in the Complaint.

14. The Complaint violates Rule 8 of the Ohio Rules of Civil Procedure.

15. Michaels reserves the right to offer proof in support of additional defenses as may be developed through investigation and discovery.

Respectfully submitted,

Brandon D. R. Dynes, Esq. (#0068246)
    Email: BDynes@tddlaw.com
Todd C. Hicks, Esq. (#0063255)
    Email: THicks@tddlaw.com
Ezio A. Listati, Esq. (#0046703)
    Email: EListati@tddlaw.com
THRASHER, DINSMORE & DOLAN, LPA
100 7th Avenue, Suite 150
Chardon, Ohio 44024-1079
Telephone: 440/285-2242

*Attorneys for Defendant Michaels Stores, Inc.*

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

4

## Certificate of Service

A copy of the foregoing Defendant's Reply Brief in Support of Motion to Dismiss was sent via email and regular U.S. mail service on this, the ___6ᵗʰ___ day of November, 2012, to the following:

Patrick J. Perotti, Esq.
Nicole T. Fiorelli, Esq.
Michael R. Rudick, Esq.
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
*Attorney for Plaintiff*

Brandon D. R. Dynes, Esq. (#0068246)

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

5

FILED

2012 DEC 12 PM 2 29

MAUREEN G. KELLY
LAKE CO.
WILLIAM J. HENRY, CLERK OF COURT

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

WILLIAM J. HENRY,

Plaintiff,

vs.

MICHAELS STORES, INC.,

Defendant.

CASE NO. 12-CV-001097

JUDGE JOSEPH GIBSON

ORDER GRANTING
MOTION FOR ADMISSION
*PRO HAC VICE* OF
NORMAN K. BECK

Upon Motion, and for good cause given, Attorney Norman K. Beck of the law firm of Winston & Strawn LLP, currently Illinois counsel for Defendant Michaels Stores, Inc., is hereby granted permission to practice before this Court, *pro hac vice*, as counsel in the within matter.

IT IS SO ORDERED.

Dated: 12/11/12

JUDGE JOSEPH GIBSON

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.
Norman K. Beck, Esq.

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

V

FILED

2012 DEC 12 PM 2 29

WILLIAM O. KELLY
LAKE CO.
CLERK OF COURT

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

| | |
|---|---|
| WILLIAM J. HENRY, | CASE NO. 12-CV-001097 |
| Plaintiff, | |
| | JUDGE JOSEPH GIBSON |
| vs. | |
| | **ORDER GRANTING** |
| | **MOTION FOR ADMISSION** |
| MICHAELS STORES, INC., | ***PRO HAC VICE* OF** |
| | **MATTHEW D. BARNES** |
| Defendant. | |

Upon Motion, and for good cause given, Attorney Matthew D. Barnes of the law firm of Winston & Strawn LLP, currently Illinois counsel for Defendant Michaels Stores, Inc., is hereby granted permission to practice before this Court, *pro hac vice*, as counsel in the within matter.

IT IS SO ORDERED.

Dated: 12/11/18

JUDGE JOSEPH GIBSON

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.
Matthew D. Barnes, Esq.

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

FILED

2012 DEC 12 PM 2 30

MAUREEN KELLY
LAKE CO.
CLERK OF COURT

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

WILLIAM J. HENRY,

Plaintiff,

vs.

MICHAELS STORES, INC.,

Defendant.

CASE NO. 12-CV-001097

JUDGE JOSEPH GIBSON

<u>ORDER GRANTING</u>
<u>MOTION FOR ADMISSION</u>
<u>*PRO HAC VICE* OF</u>
<u>TIMOTHY J. ROONEY</u>

Upon Motion, and for good cause given, Attorney Timothy J. Rooney of the law firm of Winston & Strawn LLP, currently Illinois counsel for Defendant Michaels Stores, Inc., is hereby granted permission to practice before this Court, *pro hac vice*, as counsel in the within matter.

IT IS SO ORDERED.

Dated: 12/11/12

JUDGE JOSEPH GIBSON

THRASHER
DINSMORE
& DOLAN
A Legal Professional Association

100 7TH AVENUE
SUITE 150
CHARDON, OHIO 44024
PHONE: (440) 285-2242
FAX: (440) 285-9423

1400 W. 6TH STREET
SUITE 400
CLEVELAND, OHIO 44113
PHONE: (216) 255-5431
FAX: (216) 255-5450

www.tddlaw.com

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.
Timothy J. Rooney, Esq.

WILLIAM J. HENRY,

    Plaintiff,

vs.

MICHAELS STORES, INC.,

    Defendant.

CASE NO. 12-CV-001097

JUDGE JOSEPH GIBSON

The parties to this Stipulated Protective Order have agreed to the terms of this Order;

accordingly, it is ORDERED:

1. Scope. All documents produced in the course of discovery, including initial disclosures,

all responses to discovery requests, all electronically stored information, all deposition testimony

and exhibits, all documents produced by third parties pursuant to subpoenas in this litigation, any

other materials which may be subject to restrictions on disclosure for good cause, and all

information derived directly therefrom (collectively, "Documents"), shall be subject to this Order

concerning confidential information, as set forth below. The Order is also subject of the Local

Rules of this Court and the Ohio Rules of Civil Procedures on matters of procedure and

calculation of time periods.

2. Parties. "Party" means a named plaintiff or a named defendant in this suit. The term

"Party" does not include absent class members. "Producing Party" means any Party producing

Documents designated "CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER" or

designating Documents produced by a third party pursuant to a subpoena in this litigation as

"CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER." The term "Producing Party" also

includes third parties producing Documents pursuant to subpoena in this litigation that are

designated by the third party as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." "Receiving Party" means any Party receiving Documents designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

3. **Form and Timing of Designation.** A Party, or a third party producing documents pursuant to a subpoena in this litigation, may designate Documents as confidential and restricted in disclosure under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the Document in a manner that will not interfere with the legibility of the document and that will permit complete removal of the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation (if necessary). Documents shall be designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" prior to, or at the time of, the production or disclosure of the Documents, provided, however, that a Party may designate Documents produced by a third party pursuant to a subpoena in this litigation as "CONFIDENTIAL – SUBJECT TO A PROTECTIVE ORDER" within one week of receiving those Documents from the third party. The designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" does not mean that the Document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

4. **Documents Which May be Designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."** Any Producing Party may designate Documents as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" upon making a good-faith determination that the Documents contain information protected from disclosure by statute or that should otherwise be protected from disclosure, such as confidential personal information, employment information, personnel records, workers' compensation information, financial information, financial reports, tax returns, proprietary information, trade secrets, business

forecasts, strategy documents, pricing documents, or any other sensitive commercial information that is not publicly available (collectively, "Confidential Information"). Public records and other information or documents that are publicly available may not be designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

5. **Depositions.** Deposition testimony shall be deemed "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" only if designated as such. Such designation shall be specific as to the portions of the transcript or any exhibit to be designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." Thereafter, the deposition transcripts and any those portions so designated shall be protected as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," pending objection, under the terms of this Order.

6. **Protection of Confidential Material.**

(a) **General Protections.** Documents designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and Confidential Information shall not be used or disclosed by the Receiving Party, counsel for the Receiving Party, or any other persons identified in ¶ 6(b) for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action (including any appeal thereof), and as it relates to documents which were involved in any transaction of the named Plaintiff or certified class member, to counsel the named Plaintiff, or any member of any certified class certified in this case, about the case or their rights on any matter.

(b) **Limited Third-Party Disclosures.** The Receiving Party and counsel for the Receiving Party shall not disclose or permit the disclosure of any "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" Documents or

Confidential Information to any third person or entity, except as set forth in subparagraphs (1)-(5). Subject to these requirements, the following categories of persons may be allowed to review Documents that have been designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or Confidential Information:

    (1)    **Counsel.** Counsel for the Receiving Party and employees and agents of counsel who have responsibility for the preparation and trial of the action, including the Receiving Party's in-house counsel and legal department.

    (2)    **Parties.** The Receiving Party and employees of the Receiving Party.

    (3)    **Class Members.** Any member of any class certified in this case (other than the named Plaintiff), but only after such class member has completed the certification contained in Exhibit A, Acknowledgment and Agreement to be Bound by Stipulated Protective Order.

    (4)    **Court Reporters and Recorders.** Court reports and recorders engaged for depositions.

    (5)    **Consultants, Investigators and Experts.** Consultants, investigators, or experts employed by the Receiving Party or counsel for the Receiving Party to assist in the preparation and trial of this action or proceeding, but only after such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to be Bound by Stipulated Protective Order.

(6)     **Others by Consent.** Other persons, only by written consent of the Producing Party or upon order of the Court and on such conditions as may be agreed or ordered. All such persons shall execute the certification contained in Exhibit A, Acknowledgment and Agreement to be Bound by Stipulated Protective Order.

(c) **Control of Documents.** Documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and Confidential Information shall be held in strict confidence by the Receiving Party. Counsel for the Receiving Party shall take reasonable and appropriate measures to prevent unauthorized disclosure of Documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and Confidential Information pursuant to the terms of this Order. No copies of Documents or Confidential Information shall be made except by those people identified in Paragraph 6(b) above, and then only to the extent necessary for them to perform necessary functions related to this proceeding. Counsel for the Receiving Party shall keep appropriate records regarding the location of copies of the Producing Party's Documents and Confidential Information sufficient to facilitate the certifications required by Paragraph 11. Further, counsel for the Receiving Party shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of one year after dismissal of the action, the entry of final judgment, and/or the conclusion of any appeals arising therefrom.

(d) **Copies.** Prior to production to a Receiving Party, all copies, electronic images, duplicates, extracts, summaries or descriptions (collectively, "Copies") of

Documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order, or of any individual portion of such a Document, shall be affixed with the designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," if the word does not already appear on the copy. All such Copies shall thereafter be entitled to the protection of this Order. The term "Copies" shall not include indices, electronic databases, or lists of documents; provided that these indices, electronic databases, or lists do not contain substantial portions or images of the text of confidential Documents and do not otherwise disclose the substance of the confidential information contained in those Documents.

(e) **Inadvertent Production.** In the case of a *bona fide* inadvertent disclosure, Documents or information can be later designated by the Producing Party as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." Further, the Parties expressly contemplate that documents disclosed by any Producing Party may inadvertently include documents falling within the strictures of the attorney-client privilege and/or work product doctrine. The Parties expressly stipulate that the inadvertent production of any documents potentially protected by the attorney-client privilege and/or attorney work product doctrine ("Privileged Information") does not constitute a waiver of the Producing Party's right to assert a claim of privilege, and any Receiving Party hereby expressly waives any argument that any Producing Party waived the right to assert said privileges with respect to allegedly Privileged Information produced by any Producing Party. Upon written notice of an inadvertent production of Privileged Information by the Producing

Party, the Receiving Party shall make no further use of the Privileged Information until further order of the Court. The Producing Party shall notify the Receiving Party in writing of the claim of inadvertent production of Privileged Information and request return of all copies thereof, and the Receiving Party shall then have seven days to determine in good faith whether to contest such claim and to either (a) return the Privileged Information and all copies thereof and destroy all records of the contents of such Privileged Information, or (b) notify the Producing Party in writing of an objection to the claim of inadvertent production and/or privilege and the grounds for that objection. The Producing Party shall then have 20 days to move for an order requiring that the Privileged Information and all copies thereof be returned and any other appropriate relief. Any Party may request expedited treatment of any request for a determination that a production was inadvertent. During the pendency of any such request or motion, the Receiving Party may retain any and all copies of the Privileged Information, but shall make no use of it other than is necessary in connection with proceedings related to such determination, unless and until the Court determines the Privileged Information is not privileged or protected work product, or that the disclosure was not inadvertent. Any copy of Privileged Information submitted to the Court in connection with proceedings related to such a determination shall be under seal. Upon a determination by the Court that Privileged Information is privileged or protected work product and that its disclosure was inadvertent, the Receiving Party shall promptly return the original and all copies thereof to the Producing Party and otherwise comply with said order.

7. **Filing of "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" Documents Under Seal.** Should any Documents designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or Confidential Information become incorporated in and/or made exhibits to any affidavit, answer to interrogatory, deposition transcript or videotape, brief, memorandum, hearing transcript, trial transcript, or other materials to be filed in this or any other action, such materials shall be filed with the Clerk of the Court under seal and made available only to the persons described in Paragraph 6(b) above. All such materials filed with or submitted to the Court shall be conspicuously marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" prior to such filing or submission and shall be accompanied by a written request that the materials be placed under seal. To the extent that a publicly filed brief, memorandum, or pleading references any Document marked as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," the brief, memorandum, or pleading shall refer the Court to the particular exhibit filed under seal without disclosing the contents of any Confidential Information.

(a) Before any Document marked as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" is filed under seal with the Clerk, the filing Party shall first consult with the Party that originally designated the Document as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" to determine whether, with the consent of that Party, the document or a redacted version of the Document may be filed with the Court not under seal.

(b) Where agreement is not possible or adequate, before a "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" Document is filed with the Clerk, it shall be placed in a sealed envelope marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE

ORDER DOCUMENTS," displaying the case name, docket number, a designation of what the document is, the name of the Party in whose behalf it is submitted, and name of the attorney who has filed the documents on the front of the envelope. A copy of any document filed under seal shall also be delivered to the judicial officer's chambers.

(c) To the extent that it is necessary for a Receiving Party to discuss the contents of any confidential information in a written pleading, then such portion of the pleading may be filed under seal with leave of Court. In such circumstances, the Receiving Party's counsel shall prepare two versions of the pleadings, a public and a confidential version. The public version shall contain a redaction of references to "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" documents. The confidential version shall be a full and complete version of the pleading and shall be filed with the Clerk under seal as above. A copy of the unredacted pleading also shall be delivered to the judicial officer's chambers.

8. **Challenges by a Party to Designation as Confidential.** Any "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation is subject to challenge by the Receiving Party. Before filing any motions or objections to a confidentiality designation with the Court, the objecting Party shall have an obligation to meet and confer in a good-faith effort to resolve the objection by agreement. If agreement is reached confirming or waiving the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation as to any Documents subject to the objection, the Producing Party shall serve on all Parties a notice specifying the Documents and the nature of the agreement.

9. **Action by the Court.** Applications to the Court for an order relating to any documents designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be by motion under any other procedures set forth in the presiding judge's standing orders or other relevant

orders. Nothing in this Order or any action or agreement of a Party under this Order limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or use in discovery or at trial.

10. **Use of Confidential Documents or Confidential Information at Trial.** If a Receiving Party intends to present at trial "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" Documents or Confidential Information derived therefrom, such Party shall provide advance notice to the Producing Party at least five (5) days before the commencement of trial by identifying the documents or information at issue as specifically as possible (i.e., by Bates number, page range, deposition transcript lines, etc.). The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial. In the event that any Confidential Information is used or disclosed in any hearing or trial, such material shall not lose its confidential status by reason of such use or disclosure, unless otherwise ordered by the Court.

11. **Obligations on Conclusion of Litigation.**

(a) **Order Remains in Effect.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b) **Return of CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER Documents.** Within 30 days after dismissal or entry of final judgment not subject to further appeal, all documents treated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order, including copies as defined in ¶ 5(d), shall be returned to the Producing Party, unless: (1) the Document has been filed without restriction as to disclosure; (2) the Parties agree to destruction in lieu of

return; or (3) as to Documents bearing the notations, summations, or other mental impressions of the Receiving Party, that Party elects to destroy the documents and certifies to the Producing Party that it has done so. The Receiving Party shall certify to the Producing Party that it has fully complied with this provision. Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index which refers or relates to information designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," so long as that work product does not duplicate verbatim substantial portions of the text or images of confidential documents. This work product shall continue to be protected as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order. An attorney may use this work product in a subsequent litigation as long as it does not contain or reference any Confidential Information.

(c) **Return of Documents Filed under Seal.** After dismissal or entry of final judgment not subject to further appeal, the Clerk shall return to counsel for the filing Party documents filed or offered at trial under seal or otherwise restricted by the Court as to disclosure.

**12. Order Subject to Modification.** This Order shall be subject to modification by the Court on its own motion or on motion of a Party or any other person with standing concerning the subject matter. Motions to modify this Order shall be served and filed under the presiding judge's standing orders or other relevant orders.

**13. No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the Parties and for the purpose of facilitating discovery. Nothing herein shall

be construed or presented as a judicial determination that any documents or information designated CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER by counsel or the Parties is subject to protection under Rule 26(c) of the Ohio Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

14. Persons Bound. This Order shall take effect when entered and shall be binding upon all counsel and their law firms, the Parties, all absent class members, and persons made subject to this Order by its terms. Notwithstanding any other provision of this Order, the Producing Party does not lose the freedom to deal with its own Documents or Confidential Information in the manner of its own choosing.

*So Ordered.*

DATED:

_____
JUDGE JOSEPH GIBSON

WE SO STIPULATE
and agree to abide by the
terms of this Order

_____
Counsel for: Plaintiff

Dated: December 20, 2012

WE SO STIPULATE
and agree to abide by the
terms of this Order

_____
Counsel for Defendant

Dated: December 27, 2012

## EXHIBIT A
## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND
## BY STIPULATED PROTECTIVE ORDER

I, _____, acknowledge that I have received and read the

Stipulated Protective Order entered in *William J. Henry v. Michael's Stores, Inc.*, Case No. 12

CV 001097. I agree to be bound by all applicable provisions of the Stipulated Protective Order; I

agree not to disclose or use any Confidential Information in a manner inconsistent with the terms

of the Stipulated Protective Order; and I agree to submit to the jurisdiction of the Common Pleas

Court Lake County, Ohio in the event of any dispute concerning the terms of the Stipulated

Protective Order as applied to me.


_____
Signature


_____
Title/Employer


_____
Date

RECEIVED
APR 2 - 2013

FILED

IN THE COURT OF COMMON PLEAS
2013 MAR 28  P 12:45  LAKE COUNTY, OHIO

MAUREEN G. KELLY
LAKE CO. CLERK OF COURT

WILLIAM J. HENRY,                    )        CASE NO. 12CV001097
                                     )
        Plaintiff                    )
                                     )        JUDGMENT ENTRY
    vs.                              )
                                     )
MICHAELS STORES, INC.,               )
                                     )
        Defendant                    )

        The within cause came on for consideration this day, to wit: March 27, 2013 upon
the following:

    1.    Plaintiff's Motion to Compel Responses to Interrogatories and
          Requests for Production and Memorandum in Support, filed February
          6, 2013;

    2.    Defendant's Opposition to Plaintiff's Motion to Compel Responses to
          Interrogatories and Requests for Production, filed February 20, 2013;
          and

    3.    Plaintiff's Reply Brief in Support of Motion to Compel Responses to
          Interrogatories and Requests for Production, filed February 25, 2012.

        In his Motion, Plaintiff asks this Court to order Defendant to (1) produce the
requested discovery starting from 2006; and (2) respond to Plaintiff's Interrogatory No. 11
and Request for Production No. 1, seeking documents and information regarding lawsuits
and investigations of Defendant concerning their advertising practices. Defendant initially
responded to this request and stated that here have been no lawsuits filed in Ohio within
the past ten years. Plaintiff argues that he did not limit the scope of the request in time or
jurisdiction and therefore Defendant has not fully responded to these requests.

        In response, Defendant argues that because the Court dismissed Plaintiff's breach
of contract claim, the substance of Plaintiff's unjust enrichment claim is that Defendant
allegedly committed fraud by advertising false discounts. Consequently, Defendant claims
that the applicable statute of limitations on Plaintiff's unjust enrichment claim is only four

years and as such, Plaintiff is only entitled to discovery from 2008, not 2006. Further, Defendant contends that because Plaintiff's lawsuit is limited to consumers who purchased custom framing from a Michaels store in Ohio, any lawsuits or investigations outside of Ohio are irrelevant and beyond the proper scope of discovery.

In his Reply, Plaintiff asserts that his unjust enrichment claim is a "quasi-contract" claim and therefore subject to the six-year statute of limitations found in R.C. 2305.07. Moreover, Plaintiff contends that his request regarding other lawsuits is not overbroad because he only seeks information on lawsuits and investigations concerning consumer confusion over Defendant's advertising practices.

Upon review, the Court finds Plaintiff's Motion to Compel well taken. As the Court finds that Plaintiff's unjust enrichment claim has a six-year statute of limitations pursuant to R.C. 2305.07, Defendant shall produce discovery responses to Request for Production 2, 3 and 6 for the entire class period, to wit: from 2006 forward.

In addition, Defendant shall respond to Interrogatory No. 11 and Request for Production No. 1 without limitation. Defendant argues that the requests are overly burdensome, but does not provide any arguments to substantiate this claim. Further, Defendant contends that Plaintiff's requests for all lawsuits regarding Defendant's "advertising practices" is overbroad and may lead to the production of irrelevant materials. However, Plaintiff has clarified in his Reply Brief that he is only seeking information on lawsuits and investigations regarding consumer confusion over Defendant's advertising practices and/or allegations of false advertising. Accordingly, Defendant shall respond to these requests without imposing limits on time or geography.

WHEREFORE, it is the order of this Court that Plaintiff's Motion to Compel is hereby granted. Defendant shall respond to the discovery requests as outlined above.

IT IS SO ORDERED.

_____
JOSEPH GIBSON, JUDGE

Copies to:
Nicole T. Fiorelli, Esq.
Brandon D.R. Dynes, Esq.
Matthew D. Barnes, Esq.

# Exhibit D



--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546
(Cite as: 2013 WL 1104735 (U.S.))

**H**
Only the Westlaw citation is currently available.

Supreme Court of the United States
The STANDARD FIRE INSURANCE COM-
PANY, Petitioner
v.
Greg KNOWLES.

No. 11–1450.
Argued Jan. 7, 2013.
Decided March 19, 2013.

**Background:** Insured brought proposed class ac-
tion against insurer in state court, alleging that it
had breached homeowner's insurance contracts by
failing to pay certain general contractor fees, and
attaching an affidavit stipulating that he would not
seek damages for the class in excess of $5 million
in the aggregate. Following removal pursuant to the
Class Action Fairness Act (CAFA), insured filed
motion to remand. The United States District Court
for the Western District of Arkansas, P.K. Holmes,
III, J., 2011 WL 6013024, granted the motion. After
the Eighth Circuit Court of Appeals declined to
hear insurer's interlocutory appeal, 2012 WL
3828891, and denied rehearing and rehearing en
banc, 2012 WL 3828845, certiorari was granted.

**Holding:** The Supreme Court, Justice Breyer, held
that a class-action plaintiff who stipulates, prior to
certification of the class, that he and the class he
seeks to represent will not seek damages that ex-
ceed $5 million in total does not thereby prevent re-
moval of the case under CAFA, abrogating *Rolwing
v. Nestle Holdings, Inc.*, 666 F.3d 1069.

Vacated and remanded.

West Headnotes

**[1] Federal Courts 170B ⊂⇒288**

170B Federal Courts
   170BIV Citizenship, Residence or Character of
Parties, Jurisdiction Dependent on
     170BIV(B) Controversies Between Citizens
of Different States
       170Bk286 Coplaintiffs and Codefendants
        170Bk288 k. Class and Derivative Ac-
tions; Interpleader. Most Cited Cases
     Class Action Fairness Act (CAFA) provides the
federal district courts with original jurisdiction to
hear a class action if the class has more than 100
members, the parties are minimally diverse, and the
matter in controversy exceeds $5 million in sum or
value. 28 U.S.C.A. § 1332(d)(2), (d)(5)(B).

**[2] Federal Courts 170B ⊂⇒346**

170B Federal Courts
   170BV Amount or Value in Controversy Affect-
ing Jurisdiction
     170Bk344 Aggregation or Joinder of Claims
or Demands
       170Bk346 k. Representative or Class Ac-
tions. Most Cited Cases
     To determine whether the matter in controversy
exceeds the $5 million jurisdictional threshold of
the Class Action Fairness Act (CAFA), the claims
of the individual class members, both named or un-
named, who fall within the definition of the pro-
posed or certified class, must be aggregated. 28
U.S.C.A. § 1332(d)(1)(D), (d)(2), (d)(5)(B), (d)(6).

**[3] Federal Courts 170B ⊂⇒346**

170B Federal Courts
   170BV Amount or Value in Controversy Affect-
ing Jurisdiction
     170Bk344 Aggregation or Joinder of Claims
or Demands
       170Bk346 k. Representative or Class Ac-
tions. Most Cited Cases
     Class-action plaintiff who stipulates, prior to
certification of the class, that he and the class he
seeks to represent will not seek damages that ex-
ceed $5 million in total does not thereby remove the
case from the scope of the Class Action Fairness

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546
(Cite as: 2013 WL 1104735 (U.S.))

Act (CAFA); abrogating *Rolwing v. Nestle Holdings, Inc.,* 666 F.3d 1069. 28U.S.C.A. § 1332(d)(2), (d)(5).

**[4] Federal Civil Procedure 170A ☞161**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak161 k. In General. Most Cited Cases
Plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.

**[5] Stipulations 363 ☞17(2)**

363 Stipulations
    363k15 Conclusiveness and Effect
        363k17 Persons Concluded
            363k17(2) k. Persons Not Parties to Stipulation. Most Cited Cases
Precertification stipulation made by proposed class representative did not bind anyone but himself.

**[6] Removal of Cases 334 ☞15**

334 Removal of Cases
    334I Power to Remove and Right of Removal in General
        334k15 k. Condition of Case. Most Cited Cases
For purposes of removal jurisdiction, court's inquiry is limited to examining case as of the time it was filed in state court.

**[7] Federal Courts 170B ☞346**

170B Federal Courts
    170BV Amount or Value in Controversy Affecting Jurisdiction
        170Bk344 Aggregation or Joinder of Claims or Demands
            170Bk346 k. Representative or Class Actions. Most Cited Cases

Class Action Fairness Act (CAFA) does not forbid the federal court to consider, for purposes of determining the amount in controversy, the very real possibility that a nonbinding, amount-limiting stipulation may not survive the class certification process. 28 U.S.C.A. § 1332(d)(2), (d)(5).

**[8] Federal Courts 170B ☞288**

170B Federal Courts
    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
        170BIV(B) Controversies Between Citizens of Different States
            170Bk286 Coplaintiffs and Codefendants
                170Bk288 k. Class and Derivative Actions; Interpleader. Most Cited Cases
Primary objective of the Class Action Fairness Act (CAFA) is to ensure federal court consideration of interstate cases of national importance. 28 U.S.C.A. §§ 1332(d), 1453.

**[9] Removal of Cases 334 ☞75**

334 Removal of Cases
    334V Amount or Value in Controversy
        334k75 k. Allegations and Prayers in Pleadings. Most Cited Cases

**Removal of Cases 334 ☞102**

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k101 Grounds for Remand
            334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases
Federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating, via a binding affidavit or stipulation, to amounts at issue that fall below the federal jurisdictional requirement.

*Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546
(Cite as: 2013 WL 1104735 (U.S.))

by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 The Class Action Fairness Act of 2005 (CAFA) gives federal district courts original jurisdiction over class actions in which, among other things, the matter in controversy exceeds $5 million in sum or value, 28 U.S.C. § 1332(d)(2), (d)(5), and provides that to determine whether a matter exceeds that amount the "claims of the individual class members must be aggregated," § 1332(d)(6). When respondent Knowles filed a proposed class action in Arkansas state court against petitioner Standard Fire Insurance Company, he stipulated that he and the class would seek less than $5 million in damages. Pointing to CAFA, petitioner removed the case to the Federal District Court, but it remanded to the state court, concluding that the amount in controversy fell below the CAFA threshold in light of Knowles' stipulation, even though it found that the amount would have fallen above the threshold absent the stipulation. The Eighth Circuit declined to hear petitioner's appeal.

*Held* : Knowles' stipulation does not defeat federal jurisdiction under CAFA. Pp. ––– – –––.

(a) Here, the precertification stipulation can tie Knowles' hands because stipulations are binding on the party who makes them, see *Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez,* 561 U.S. ––––, 130 S.Ct. 2971, 177 L.Ed.2d 838. However, the stipulation does not speak for those Knowles purports to represent, for a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified. See *Smith v. Bayer Corp.,* 564 U.S. ––––, ––––, 131 S.Ct. 2368, 180 L.Ed.2d 341. Because Knowles lacked authority to concede the amount in controversy for absent class members, the District Court wrongly concluded that his stipulation could overcome its finding that the CAFA jurisdictional threshold had been met. Pp. ––– – –––.

(b) Knowles concedes that federal jurisdiction cannot be based on contingent future events. Yet, because a stipulation must be binding and a named plaintiff cannot bind precertification class members, the amount he stipulated is in effect contingent. CAFA does not forbid a federal court to consider the possibility that a nonbinding, amount-limiting, stipulation may not survive the class certification process. To hold otherwise would, for CAFA jurisdictional purposes, treat a nonbinding stipulation as if it were binding, exalt form over substance, and run counter to CAFA's objective: ensuring "Federal court consideration of interstate cases of national importance." § 2(b)(2), 119 Stat. 5.

It may be simpler for a federal district court to value the amount in controversy on the basis of a stipulation, but ignoring a nonbinding stipulation merely requires the federal judge to do what she must do in cases with no stipulation: aggregate the individual class members' claims. While individual plaintiffs may avoid removal to federal court by stipulating to amounts that fall below the federal jurisdictional threshold, the key characteristic of such stipulations—missing here—is that they are legally binding on all plaintiffs. Pp. ––– – –––.

Vacated and remanded.

*2 BREYER, J., delivered the opinion for a unanimous Court.

Theodore J. Boutrous, Jr., Los Angeles, CA, for Petitioner.

David C. Frederick, Washington, DC, for Respondent.

Stephen E. Goldman, Wystan M. Ackerman, Robinson & Cole LLP, Hartford, CT, Lyn P. Pruitt, Mitchell, Williams, Selig, Gates & Woodyard PLLC, Little Rock, AR, Theodore J. Boutrous, Jr., Counsel of Record, Theane Evangelis Kapur, Joshua S. Lipshutz, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, Amir C. Tayrani, Gibson, Dunn & Crutcher LLP, Washington, DC, for Petitioner.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546
(Cite as: 2013 WL 1104735 (U.S.))

Jonathan S. Massey, Massey & Gail, LLP, Washington, DC, David C. Frederick, Counsel of Record, Brendan J. Crimmins, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, DC, Michael B. Angelovich, Brad E. Seidel, Christopher R. Johnson, Nix Patterson & Roach, LLP, Austin, TX, Matt Keil, John C. Goodson, Keil & Goodson, P.A., Texarkana, AR, Richard E. Norman, R. Martin Weber, Jr., Crowley Norman LLP, Houston, TX, for Respondent.

For U.S. Supreme Court Briefs, See:2012 WL 5246242 (Pet.Brief)2012 WL 5982592 (Resp.Brief)2012 WL 6624223 (Reply.Brief)

Justice BREYER delivered the opinion of the Court.

The Class Action Fairness Act of 2005 (CAFA) provides that the federal "district courts shall have original jurisdiction" over a civil "class action" if, among other things, the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(5). The statute adds that "to determine whether the matter in controversy exceeds the sum or value of $5,000,000," the "claims of the individual class members shall be aggregated." § 1332(d)(6).

The question presented concerns a class-action plaintiff who stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total. Does that stipulation remove the case from CAFA's scope? In our view, it does not.

I

In April 2011 respondent, Greg Knowles, filed this proposed class action in an Arkansas state court against petitioner, the Standard Fire Insurance Company. Knowles claimed that, when the company had made certain homeowner's insurance loss payments, it had unlawfully failed to include a general contractor fee. And Knowles sought to certify a class of "hundreds, and possibly thousands" of similarly harmed Arkansas policyholders. App. to Pet. for Cert. 66. In describing the relief sought, the complaint says that the "Plaintiff and Class stipulate they will seek to recover total aggregate damages of less than five million dollars." *Id.,* at 60. An attached affidavit stipulates that Knowles "will not at any time during this case ... seek damages for the class ... in excess of $5,000,000 in the aggregate." *Id.,* at 75.

On May 18, 2011, the company, pointing to CAFA's jurisdictional provision, removed the case to Federal District Court. See 28 U.S.C. § 1332(d); § 1453. Knowles argued for remand on the ground that the District Court lacked jurisdiction. He claimed that the "sum or value" of the "amount in controversy" fell beneath the $5 million threshold. App. to Pet. for Cert. 2. On the basis of evidence presented by the company, the District Court found that that the "sum or value" of the "amount in controversy" would, in the absence of the stipulation, have fallen just above the $5 million threshold. *Id.,* at 2, 8. Nonetheless, in light of Knowles' stipulation, the court concluded that the amount fell beneath the threshold. The court consequently ordered the case remanded to the state court. *Id.,* at 15.

The company appealed from the remand order, but the Eighth Circuit declined to hear the appeal. *Id.,* at 1. See 28 U.S.C. § 1453(c)(1) (2006 ed., Supp. V) (providing discretion to hear an appeal from a remand order). The company petitioned for a writ of certiorari. And, in light of divergent views in the lower courts, we granted the writ. Compare *Frederick v. Hartford Underwriters Ins. Co.,* 683 F.3d 1242, 1247 (C.A.10 2012) (a proposed class-action representative's "attempt to limit damages in the complaint is not dispositive when determining the amount in controversy"); with *Rolwing v. Nestle Holdings, Inc.,* 666 F.3d 1069, 1072 (C.A.8 2012) (a precertification "binding stipulation limiting damages sought to an amount not exceeding $5 million can be used to defeat CAFA jurisdiction").

II

*3 [1][2] CAFA provides the federal district courts with "original jurisdiction" to hear a "class action" if the class has more than 100 members, the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546
(Cite as: 2013 WL 1104735 (U.S.))

parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(5)(B). To "determine whether the matter in controversy" exceeds that sum, "the claims of the individual class members shall be aggregated." § 1332(d)(6). And those "class members" include "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." § 1332(d)(1)(D) (emphasis added).

[3] As applied here, the statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of Knowles' proposed class and determine whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case. The District Court in this case found that resulting sum would have exceeded $5 million *but for* the stipulation. And we must decide whether the stipulation makes a critical difference.

In our view, it does not. Our reason is a simple one: Stipulations must be binding. See 9 J. Wigmore, Evidence § 2588, p. 821 (J. Chadbourn rev.1981) (defining a "judicial admission or stipulation" as an "express waiver made ... by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact" (emphasis deleted)); *Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez,* 561 U.S. ——, ——, 130 S.Ct. 2971, 2983, 177 L.Ed.2d 838 (2010) (describing a stipulation as " 'binding and conclusive' " and " 'not subject to subsequent variation' " (quoting 83 C.J. S., Stipulations § 93 (2000))); 9 Wigmore, *supra,* § 2590, at 822 (the "vital feature" of a judicial admission is "universally conceded to be its *conclusiveness* upon the party making it"). The stipulation Knowles proffered to the District Court, however, does not speak for those he purports to represent.

[4] That is because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified. See

*Smith v. Bayer Corp.,* 564 U.S. ——, ——, 131 S.Ct. 2368, 2380, 180 L.Ed.2d 341 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties"); *id.,* at ——, 131 S.Ct., at 2379 (" '[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified* ' " (quoting *Devlin v. Scardelletti,* 536 U.S. 1, 16, n. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002) (SCALIA, J., dissenting))); Brief for Respondent 12 (conceding that "a damages limitation ... cannot have a binding effect on the merits of absent class members' claims unless and until the class is certified").

*4 [5][6] Because his precertification stipulation does not bind anyone but himself, Knowles has not reduced the value of the putative class members' claims. For jurisdictional purposes, our inquiry is limited to examining the case "as of the time it was filed in state court," *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 390, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). At that point, Knowles lacked the authority to concede the amount-in-controversy issue for the absent class members. The Federal District Court, therefore, wrongly concluded that Knowles' precertification stipulation could overcome its finding that the CAFA jurisdictional threshold had been met.

Knowles concedes that "[f]ederal jurisdiction cannot be based on contingent future events." Brief for Respondent 20. Yet the two legal principles to which we have just referred—that stipulations must be binding and that a named plaintiff cannot bind precertification class members—mean that the amount to which Knowles has stipulated is in effect contingent.

If, for example, as Knowles' complaint asserts, "hundreds, and possibly thousands" of persons in Arkansas have similar claims, App. to Pet. for Cert. 66, and if each of those claims places a significant sum in controversy, the state court might certify the class and permit the case to proceed, but only on the condition that the stipulation be excised. Or a court might find that Knowles is an inadequate rep-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546
(Cite as: 2013 WL 1104735 (U.S.))

resentative due to the artificial cap he purports to impose on the class' recovery. *E.g., Back Doctors Ltd. v. Metropolitan Property & Cas. Ins. Co.,* 637 F.3d 827, 830–831 (C.A.7 2011) (noting a class representative's fiduciary duty not to "throw away what could be a major component of the class's recovery"). Similarly, another class member could intervene with an amended complaint (without a stipulation), and the District Court might permit the action to proceed with a new representative. See 5 A. Conte & H. Newberg, Class Actions § 16:7, p. 154 (4th ed. 2002) ("[M]embers of a class have a right to intervene if their interests are not adequately represented by existing parties"). Even were these possibilities remote in Knowles' own case, there is no reason to think them farfetched in other cases where similar stipulations could have more dramatic amount-lowering effects.

The strongest counterargument, we believe, takes a syllogistic form: First, *this* complaint contains a presently nonbinding stipulation that the class will seek damages that amount to less than $5 million. Second, if the state court eventually certifies that class, the stipulation will bind those who choose to remain as class members. Third, if the state court eventually insists upon modification of the stipulation (thereby permitting class members to obtain more than $5 million), it will have in effect created a new, *different* case. Fourth, CAFA, however, permits the federal court to consider only the complaint that the plaintiff has filed, *i.e., this* complaint, not a new, modified (or amended) complaint that might eventually emerge.

*5 [7][8] Our problem with this argument lies in its conclusion. We do not agree that CAFA forbids the federal court to consider, for purposes of determining the amount in controversy, the very real possibility that a nonbinding, amount-limiting stipulation may not survive the class certification process. This potential outcome does not result in the creation of a new case not now before the federal court. To hold otherwise would, for CAFA jurisdictional purposes, treat a nonbinding stipulation as

if it were binding, exalt form over substance, and run directly counter to CAFA's primary objective: ensuring "Federal court consideration of interstate cases of national importance." § 2(b)(2), 119 Stat. 5. It would also have the effect of allowing the subdivision of a $100 million action into 21 just–below–$5–million state-court actions simply by including nonbinding stipulations; such an outcome would squarely conflict with the statute's objective.

We agree with Knowles that a federal district court might find it simpler to value the amount in controversy on the basis of a stipulation than to aggregate the value of the individual claims of all who meet the class description. We also agree that, when judges must decide jurisdictional matters, simplicity is a virtue. See *Hertz Corp. v. Friend,* 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). But to ignore a nonbinding stipulation does no more than require the federal judge to do what she must do in cases without a stipulation and what the statute requires, namely "aggregat[e]" the "claims of the individual class members." 28 U.S.C. § 1332(d)(6).

[9] Knowles also points out that federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement. That is so. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove"). But the key characteristic about those stipulations is that they are legally binding on all plaintiffs. See 14AA C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3702.1, p. 335 (4th ed.2011) (federal court, as condition for remand, can insist on a "*binding* affidavit or stipulation that the plaintiff will continue to claim less

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

than the jurisdictional amount" (emphasis added)). That essential feature is missing here, as Knowles cannot yet bind the absent class.

Knowles argues in the alternative that a stipulation is binding to the extent it limits attorney's fees so that the amount in controversy remains below the CAFA threshold. We do not consider this issue because Knowles' stipulation did not provide for that option.

*6 In sum, the stipulation at issue here can tie Knowles' hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class. For this reason, we believe the District Court, when following the statute to aggregate the proposed class members' claims, should have ignored that stipulation. Because it did not, we vacate the judgment below and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

U.S.,2013.
Standard Fire Ins. Co. v. Knowles
--- S.Ct. ----, 2013 WL 1104735 (U.S.), 13 Cal. Daily Op. Serv. 3004, 2013 Daily Journal D.A.R. 3546

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit E

## IN THE COURT OF COMMON PLEAS
## LAKE COUNTY, OHIO

WILLIAM J. HENRY,                    )    CASE NO. 12-CV-001097
                                     )
         Plaintiff,                  )
                                     )    JUDGE JOSEPH GIBSON
    vs.                              )
                                     )
MICHAELS STORES, INC.,               )
                                     )
         Defendant.                  )

## NOTICE OF FILING OF NOTICE OF REMOVAL

TO:      Maureen G. Kelly, Clerk of Court
         Court of Common Pleas, Lake County, Ohio
         25 North Park Place
         Painesville, OH 44077-3416

         -and-

         Patrick J. Perotti, Esq.
         Nicole T. Fiorelli, Esq.
         Michael R. Rudick, Esq.
         Dworken & Bernstein Co., L.P.A.
         60 South Park Place
         Painesville, Ohio 44077
         *Attorneys for Plaintiff*

         **PLEASE TAKE NOTICE AND BE FULLY ADVISED BY THIS WRITTEN PLEADING,** filed pursuant to 28 U.S.C. § 1446(d), that on the 12th day of April, 2013, Defendant Michaels Stores, Inc. filed in the United States District Court for the Northern District of Ohio its Notice of Removal for the above-captioned case. That federal court now has full jurisdiction over the case. A copy of the filed Notice of Removal and supporting documents are attached hereto.

1

Respectfully submitted,

*Ezio A. Listati*

Ezio A. Listati (#0046703)
    Email: EListati@tddlaw.com
Brandon D. R. Dynes (#0068246)
    Email: BDynes@tddlaw.com
Todd C. Hicks (#0063255)
    Email: THicks@tddlaw.com
THRASHER, DINSMORE & DOLAN, LPA
1400 W. 6th Street, Suite 400
Cleveland, Ohio 44113
Telephone: 216/255-5431

Timothy J. Rooney (*pro hac vice*)
    Email: TRooney@winston.com
Norman K. Beck (*pro hac vice*)
    Email: NBeck@winston.com
Matthew D. Barnes (*pro hac vice*)
    Email: MBarnes@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: 312/558-5600

*Attorneys for Defendant Michaels Stores, Inc.*

## CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Filing of Notice of Removal was sent via email and regular U.S. mail service on this, the 12th day of April, 2013, to the following:

Patrick J. Perotti, Esq.
Nicole T. Fiorelli, Esq.
Michael R. Rudick, Esq.
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
pperotti@dworkenlaw.com
nfiorelli@dworkenlaw.com
mrudnick@dworkenlaw.com

*Attorneys for Plaintiff*

Ezio A. Listati (#0046703)